No. 60.—CHARLES MYGATT *et al.* plaintiffs in error, *vs.* RICH-
ARD R. GOETCHINS, defendant in error.

'[1.] When, taking the bill and answer, the structure complained of will not,
*prima facie,* constitute a nuisance, the injunction will not be continued;
but the party will proceed at his peril, the whole subject being under the
.control of the Jury at the hearing.

In Equity, in Muscogee Superior Court. Decided by
.Judge WORRILL, at Chambers, June 17th, 1856.

A bill was filed by Charles Mygatt, Philip T. Schley and
Mary E. Fishburne, against Richard R. Goetchins, alleging
.that complainants are all residents of the City of Columbus;
that said Mygatt was the owner, on the 1st day of January,
1856, of the south half of lot No. 237 in said city, upon which
lot he has erected buildings worth, together with the lot,
.about $5.000; that he has, since the 1st of January, mort-
.gaged said lot to several persons, to secure debts amounting
to $7.300; that on the 15th of. May, 1856, he executed a
quit claim deed to said premises to one Abijah Catlin, (who
is the mortgagee in the last mortgage executed to said lot,)
and in said deed warranted to said Catlin that no steam man-
ufactory of any kind whatsoever should be built opposite and
south of said premises, on lot No. 240 in said city, now oc-
cupied in part by defendant, and upon which a building used
.by defendant as a carpenter's shop now stands; that such is
said Mygatt's pecuniary condition,. it is uncertain whether he
will be able to pay his just debts; and he is interested in the
appreciation of said premises in value, in order to satisfy and
pay off said mortgages; and further, that he occupies said
premises as the tenant of said Catlin.

The bill charges that the said Schley has been, for many
years, the owner of lot known in the plan of said city as No.
238, west of and immediately adjoining lot No. 237, upon
which he has heretofore erected a brick residence and out-

buildings, and where, for many years, he has resided; that his premises are worth $6.000, and have been heretofore constantly increasing in value.

The bill charges, that Mary E. Fishburne has, for years past, owned and resided upon lots 235 and 236, in said city, said lots being immediately north of and adjoining to lots 237 and 238, and worth, with the buildings thereon, $15.-000.

The bill charges that lot 240 is but the width of a street, some one hundred and —— feet from the south half of lot 237, and situate south of and facing the same on the opposite side of said street, and is one hundred and —— feet from lot 238, and that said lots, 237 and 238, intervene lots 235 and 236, and said lot 240; that the Methodist Church is situated north-east of and some one hundred and —— feet diagonally across said street from said lot 240; that the Odd Fellow's buildings are situate on the south part of lot 241, which adjoins lot 240, and that in the lower story of said buildings a public school is kept, and has been for years; that said lot 240, which is owned by defendant, has been heretofore occupied in part by defendant's carpenter shop, and in part by a small dwelling, but about the 1st of May, 1856, complainants learning that defendant contemplated erecting on said lot a steam manufactory, (to be propelled by an engine of fifty horse power,) for the manufacture of sash and blinds, &c. caused a notice, signed by two of complainants and several others of the neighbors, to be served on said defendant, (he being served May 7th,) notifying him not to erect a steam manufactory of any kind on said lot 240, and that if he did, application would be made by the signers of the notice to enjoin him.

The bill charges, that if said steam manufactory is erected as proposed, it will result in very great damage, annoyance and inconvenience, as well as prove a great nuisance to complainants and all the neighbors, and to the public at large; that the character of defendant's business would not admit of the employment of an experienced engineer to manage the

engine used, and there would be constant danger of explo-
sion; that the smoke and soot arising from such fuel as is
ordinarily used in the furnace attached to such engine, will
be scattered all over the premises of complainants, without
the possibility of preventing it and the sparks emitted, as
well as the constant burning of fuel, and the fact that manu-
factories of the kind are filled with combustible matter, will
render the property of complainants more liable to be de-
stroyed by fire; that the continued noise made by letting off
steam from the boilers, and by blowing the whistle attached
to the engine and by the rolling, changing and working of
the machinery, will subject the complainants to the greatest
annoyance, and will be, in cases of sickness, an insufferable
nuisance; that complainants, on account of the facts afore-
said, would, if said manufactory is erected, have to pay lar-
ger rates to insure their property aforesaid, and the same
would be much depreciated in value; that the erection of said
manufactory would tend greatly to disturb the congregation
which worships in said Methodist Church, and to frighten
horses tied in front of said church during service, and also to
disturb the exercises of said public school—thus becoming a
public nuisance.

(A plat is attached to the bill, showing that St. Clair
Street separates lot 240 from the lots of complainants, and
that the public buildings referred to are situated as already
described.)

The bill charges that all the buildings near said lot 240
are private dwellings, except the public buildings referred to,
and one grocery store situate on the north-west corner of lot
No. 239.

The bill, after charging that defendant is proceeding to
erect said manufactory, although well aware of the private
and public injury it will occasion, prays that he be enjoined,
&c.

The prayer of the bill was granted, and defendant filed his
answer thereto.

The answer admits all the allegations in reference to the

ownership of the lots mentioned in the bill and their relative positions, with the qualification, that defendant believes that said quit claim deed was made to Abijah Catlin, (the brother-in-law of Mygatt and a resident of the State of Connecticut,) without consideration, with a view to strengthen complainants' application for an injunction, and with the statement that the manufactory proposed to be erected by defendant, will stand about 120 feet from Mygatt's residence, and the furnace and chimney 170 or 180 feet from said residence; that the building will stand upwards of 200 feet from Schley's residence, and the chimney and furnace about 300 feet therefrom, and that Mrs. Fishburne's lots will be about 400 feet from the chimney of said building, with houses between so that one can scarcely be seen from the other.

The answer admits that the Methodist Church is some 300 or 400 feet from defendant's lot, and that the Odd Fellow's building is located as described in the bill, and that a public school is kept in the lower part of it, but states that defendant does not intend to work his engine and machinery at night or on the Sabbath day; and therefore, denies that the congregation worshipping at said church, or the exercises of said school will be disturbed; it also states, that neither one of complainants is a member of said church or congregation, or of the Odd Fellows, and that one of the complainants endeavored, before said bill was filed, to induce the minister and some of the members of said church to join in the bill, which they refused to do; it denies the right of complainants to interfere in behalf of said church and O. Fellow's Hall, and submits, that when the trustees thereof are aggrieved, they can have their grievances redressed; it states that def't has, for fifteen years past, had a large wooden workshop and lumber yard on lot 239, which workshop he proposes to remove and erect said manufactory in lieu of it, and that said manufactory will suit his purposes better, and be safer to his neighbors than the workshop; that the manufactory will be a brick building with iron doors next to the furnace, brick en-

gine floor, and in every respect fire-proof, as far as it can be made so; the furnace will be in the rear of the building about 60 feet from St. Clair street, 100 feet from Jackson street, and 200 feet from Oglethorpe street; the machinery will consist of one or more planing machines, circular saws and such other machinery as are usual in moderate sized factories; the furnace will be bricked in and entirely disconnected from any combustible matter; the chimney will be about 70 feet high, and in accordance with the recent scientific improvements, will be so constructed as to absorb a large portion of the smoke and soot ordinarily made, and thus prevent more from escaping from the top of said chimney than usually escapes from a large kitchen chimney.

The answer denies that the erection of said manufactory will result in any great damage, annoyance and inconvenience, or prove a nuisance to complainants or other persons, or to the public at large, and submits that the progress of the age and the wants of mankind require the employment of steam power; and the possibility of the explosion of his engine, is no reason why it should not be used. Defendant states that he is a working mechanic and understands his business, and his interests require that his engine shall be properly managed, and he intends to have it so managed that no accidents shall happen which he can prevent; and further, that if complainants are injured in their property by its careless management, he is able to respond in damages.

The answer denies that complainants' property will be endangered by the sparks emitted by said chimney; it states that they will be absorbed in the same way that the smoke and soot are destroyed; that such is the opinion of scientific mechanics, and that such is proven to be a fact by reference to the workings of other establishments of like character in Columbus, of which there are many, and some of them of long standing, and no accident has ever occurred by means of the sparks thrown from them; it admits that the machinery, when in full operation, will make some little noise, but states that noise is a necessary accompaniment of all mechan-

Mygatt *et al. vs.* Goetchins.

ical pursuits, and denies that a mechanic can be enjoined from pursuing his calling because he has to use the plane and the hammer; it denies, however, that the noise will occasion the annoyance which the bill alleges; denies that defendant intends to attach any whistle to his engine, and states that his business will require the use of but little steam; and therefore, the creation of but little noise; and further, that according to recent improvements in machinery, the escape of steam from a boiler is not calculated to produce much disturbance; it refers to the experience of persons residing near the Gin Factory in Columbus, and states that said factory is in a thickly settled part of the city, and has been in operation for years, and runs more machinery than defendant expects to use; yet, defendant has never heard any one complain of it, but on the contrary, can say from the concurrent testimony of persons living in that vicinity, that complainants will not be troubled by the rattle or the rolling of defendant's machinery; it denies that the erection of said manufactory will cause any more danger of fire than the erection of an ordinary wooden building, and denies that if said manufactory were to take fire, that complainants' property is near enough to be endangered; states that all necessary precautions will be taken to prevent accidents from fire, and that it is defendant's intention to construct a reservoir capable of holding water, and have fire apparatus attached to his engine, so that in case of fire he can render efficient aid, not only to himself but to his neighbors. Defendant states that he cannot say whether the erection of his building will increase the rate of insurance on complainants' property or not, but denies, even if such should be the case, that complainants would have the right to prevent him from improving his property; he denies that complainants' property will be depreciated in value by the erection of said manufactory, and says if such should be the case, he is able to respond in damages.

The answer admits that defendant was served with a notice not to erect said manufactory, early in May, 1856, signed by two of complainants and several other persons, but states

(and an exhibit is appended showing the fact) that all the persons who signed said notice, except complainants, have yielded their objections and withdrawn their names from said notice; it states, that on account of defendant's refusal to receive Mr. Mygatt as a partner in his business some time ago, he has been actively engaged in endeavoring to enjoin defendant; and further, that complainants suffer, without complaint, a livery stable, where 50 or 100 horses and mules are constantly kept, to exist nearer to their residences than defendant's lot.

The answer states that defendant has contracted, at great cost, for the machinery he proposes to use, a part of which has been delivered, and that he has contracted for the erection of the proposed brick building, which was being built when said injunction was granted; and that he has sustained and is now sustaining, great damage from the operation of said injunction.

Appended to the answer are affidavits of several persons, who testify, substantially, as follows:

THOMAS STANFORD states he has been for twenty years a practical engineer and steam engine builder, and understands the business well; that all engines properly constructed can bear a pressure of 200 pounds to the square inch; and such are the government regulations as to the capacity of boilers, and the same regulations require that a pressure of not more than 130 pounds to the square inch be allowed; and that there is no case on record of any explosion when these regulations were followed; he states that he has been employed to construct boilers for defendant, and that they will safely bear a pressure of 200 pounds to the square inch; but being larger than defendant's business requires, it will not be necessary for defendant to use a pressure of more than 50 pounds to propel his machinery, and there can be no danger of an explosion; he states that he is acquainted with the way in which defendant will arrange his furnace, and substantiates the statements of the answer on this point. He also states, that there is no danger from sparks; that they would be con-

sumed before reaching the top of a chimney 70 feet high, as well as a large quantity of the smoke and soot, and that there is no more danger of fire than from fire places of an ordinary dwelling-house. He states further, that he is running an engine with a smoke-stack 40 feet high; and he knows, from particular observation, that no sparks are thrown out so as to create apprehension of danger; and further, that as the steam escapes through the smoke-stack, it makes but little noise, and would soon not be noticed.

CHARLES P. LEVY, of the Union Foundry, Columbus, and W. L. CLARK, Superintendent Machinery Muscogee Rail Road, state that they are practical machinists and engineers, and taking into consideration the kind of building defendant proposes to erect, and the machinery he proposes to use, they consider the danger of explosion very remote, and all other danger, unpleasantness and annoyance as altogether imaginary.

ISRAEL H. JANSEY, a machinist, states, substantially, the same facts.

THOMAS J. STEWART states that he is a practical working mechanic, and is now about 53 years old; that for 7 years he has been engaged in the Gin Factory in Columbus; that it is propelled by an engine of at least thirty horse power, and the machinery consists of planing machines, filing machines, &c. and a number of circular-saws; that plate iron and steel, and solid bars of iron are worked on by machinery, &c.; that the furnace is on the outside of said building, and has been run until two years ago with a cylinder boiler, and since then with a flue boiler and smoke-stack about 50 feet high; that most of the smoke and soot is consumed by the heat of said boiler, furnace and smoke-stack, and he is certain that very few, if any sparks, ever reach the top of the smoke-stack, and no danger of fire is to be apprehended from any such cause; that the machinery makes some noise, but not enough to cause complaint among the neighbors, and that he has never heard any complaint on the part of the neigh-

bors on account of said factory, and he believes every lot in the neighborhood of it is occupied.

J. S. PERDUE states that he resides within 250 or 300 feet of said Gin Factory, and neither he nor his family have ever been annoyed by it in any respect. He states that he gets insurance at 1 per cent, which is as cheap as any wooden building can be insured, and he does not think the existence of said factory so near him increases the risk of fire.

On the 17th of June, 1856, defendant's Counsel moved to dissolve the injunction granted in this case, on the ground that the equity of the bill had been sworn off by the answer and the affidavits accompanying it. The Court granted the motion and passed an order dissolving said injunction, and Counsel for complainants assigns the same as error.

W. DOUGHERTY, for plaintiffs in error.

JOHNSON & SLOAN, for defendant in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] Taking the bill and answer, the contemplated structure, *prima facie*, will not be a nuisance. It will neither work hurt, discomfort or damage. The only sense it will offend, is that of hearing. And we know of no sound, however discordant, that may not, by habit, be converted into a lullaby, except the braying of an ass or the tongue of a scold.

Should the machinery be erected upon a plan different from that indicated in the answer, and upon which our judgment of affirmance is predicated, and produce the mischief apprehended by the complainants, relief, ample and effectual, may be decreed by the Jury at the hearing. They can compel the defendant to comply with his implied undertaking, or abide the consequences.

All persons purchase town lots in view of the possible purposes to which they may be appropriated. And if it be true, that the risk from exposure will increase the insurance on

contiguous lots, it cannot be denied that it will be more than counterbalanced by the enhanced value of property produced by the prosperity of the city, occasioned by the establishments. It is suicidal to oppose them. There is too much that is fanciful and conjectural in the evils and dangers which are menaced. But be this as it may, as well attempt to stop up the mouth of Vesuvius as to arrest the application of steam to machinery at this day.