## HILL *et al.* v. McBURNEY OIL & FERTILIZER CO.

1. Where it appears that a majority of a town council are disqualified, by reason of removal from town, interest in the case, or relationship to the parties, to abate an alleged nuisance under section 4762 of the Civil Code, equity will take jurisdiction.

2. At an interlocutory hearing of an application for an injunction, affidavits which do not state the court or case and which do not show affirmatively that they were made to be used in that particular case are inadmissible in evidence. It is error for the judge, over proper objection, to read and consider such affidavits in making up his judgment granting or refusing the injunction.

3. All of the affidavits offered by the defendant were inadmissible because of the defect above described, while the petition and affidavits of the plaintiffs showed that the factory whistle, the use of which in a populous community was sought to be enjoined, was blown at unseasonable hours, was entirely unnecessary, and was so loud, harsh, and terrific as seriously to interfere with plaintiffs' reasonable enjoyment of their habitations and cause them special

damage. The blowing of the whistle was, therefore, shown to be a nuisance, and the judge erred in not granting the injunction.

Argued January 22, — Decided February 26, 1901.

Petition for injunction. Before Judge Reese. Warren superior court. November 3, 1900.

*E. P. Davis* and *Foster & Butler*, for plaintiffs.
*Ira E. Farmer*, for defendant.

SIMMONS, C. J.   Hill and others applied for an injunction to restrain the McBurney Oil and Fertilizer Company from blowing a certain steam whistle.   The petition alleged, that the plant of the defendant was situated in a populous residence community of the town of Warrenton, and that the dwellings of the plaintiffs were situated near by; that the steam whistle used in connection with the plant was "loud, shrill, shrieking, discordant, startling, and terrific," and its blasts such as to injure the health of plaintiffs, disturb their sleep, and seriously interfere with their reasonable enjoyment of their habitations; that the damage to the plaintiffs was, because of the proximity of their homes, special and not shared by the public generally; that the whistle was blown at unseasonable hours, particularly in the very early morning; that the use of the whistle was entirely unnecessary; that the use of the whistle was a continuing nuisance, causing injury every day; that to sue for damages would necessitate a multiplicity of suits; and that the injury to the plaintiffs was great but not susceptible of adequate compensation in damages.   The plaintiffs also made certain allegations, which will be presently discussed, to show why resort was not had to the remedy provided by statute for the abatement of nuisances in towns and cities.   The petition prayed that the defendant be enjoined from blowing the whistle at certain specified times in the early morning and at all other times, but on the hearing the plaintiffs expressly abandoned all objections to the moderate blowing of the whistle at noon and at the time of the usual afternoon signal.   The defendant answered, admitting the moderate use of the whistle, but denying most of the material allegations of the petition.   The answer also alleged that the plaintiffs had an ample and complete remedy at law, and that the plaintiffs should avail themselves of the statutory remedy if the whistle could be considered as a nuisance.   On the interlocutory hearing the plaintiffs introduced in evidence a large

number of affidavits tending to sustain fully the allegations of the petition.   The defendant offered to introduce a great many affidavits, every one of which was objected to by the plaintiffs on the ground that it was not entitled in the case.   "The court," it is stated in the bill of exceptions, "ruled that it must appear in the affidavit in what case the witness was sworn.   As the court was to reserve its decision, the defendant then informally filed all of its affidavits with the court, without reading them, which the court identified as affidavits used in the case and which the court considered in rendering its decision."   The judge denied and refused the injunction, and the plaintiffs excepted.

1. It was argued here that the refusal of the injunction was proper, because the plaintiffs had an adequate and complete remedy at law, and that, if the use of the whistle was a nuisance, it should have been abated by proceedings instituted under section 4762 of the Civil Code.   That section provides that, if a nuisance complained of exists in a town or city, it may be abated and removed by order of the municipal authorities.   Ordinarily this would have been the plaintiffs' remedy (*Broomhead* v. *Grant*, 83 *Ga.* 451), but the pleadings and evidence in the present case show that this remedy was not open to the plaintiffs.   They alleged and proved that the town council was composed of five commissioners, and that, of these, one was a part owner of the defendant's mill, another was a brother-in-law of such part owner, and a third had removed from the town and become a resident in a town in another county.   They showed that they had made application to the town council for the abatement of the nuisance, and that the town council had refused to act.   They showed that the majority of the council were disqualified, as above stated, from acting in the premises, that the minority could not legally act, and that the statutory remedy was, therefore, inadequate to their needs.   None of this was denied or contradicted by any evidence which the judge could properly have considered.   We think that the plaintiffs showed reasons amply sufficient to justify a resort to some remedy other than that provided in section 4762 of the Civil Code.   In the absence of the statutory remedy, a court of equity should take jurisdiction of a case like this.   In the first place, the statutory remedy was not available or feasible under the circumstances of the case.   In the next place, if the nuisance was not abated it would

continue, and would inflict on the plaintiffs injuries which could not be readily ascertained or adequately compensated in damages by a suit at law. In the third place, in order to recover damages for the results of a continuing nuisance of this kind, a multiplicity of suits would be necessary. Conceding for the time that the acts complained of constituted a nuisance, we think it clear that the case was one of which equity should take jurisdiction. In the case of *Butler* v. *Thomasville*, 74 *Ga.* 570, it was held, following *Georgia etc. Co.* v. *Colquitt*, 72 *Ga.* 172, that "If a nuisance causes special damage to an individual, in which the public do not participate, such special damage gives a right of action, and as an action may be brought for every day the nuisance continues, equity, which abhors a multiplicity of suits, will entertain jurisdiction, so as to do full and complete justice between the parties and terminate the litigation. . . More especially will this be done when the party which seeks to create the nuisance is the only tribunal which has the power to abate the nuisance." The case of *Kavanagh* v. *Railroad Co.*, 78 *Ga.* 271, arose upon an application to a court of equity to enjoin a nuisance. This court held that, while the nuisance was a public one, the plaintiff could maintain an action therefor if she showed special damage in which the public did not participate; and that "if the injury, from its nature, is not susceptible of being adequately compensated by damages at law, or is such as that, from its continuance, a permanent mischief must occasion a constantly recurring grievance, which can not be otherwise prevented, equity will enjoin." Where there is no available statutory remedy for the abatement of a nuisance, the only effectual remedy is in a court of equity, "and the jurisdiction is predicated upon the broad ground of preventing irreparable injury, interminable litigation, a multiplicity of actions, and the protection of rights." 2 Wood, Nuisances (3d ed.), § 777.

2. Not a single one of the many affidavits offered in evidence by the defendant was entitled in the court or case, and, as above stated, objection was made to them on that ground. While the judge appears on the hearing to have thought the objection a good one, he certifies that he considered the affidavits in deciding the case. Exception is taken to this, the plaintiffs claiming that the affidavits were inadmissible because they were not entitled in the case and did not show affirmatively that they were made to be used in

this particular case.    We think the exception well taken.    "An affidavit should generally be entitled in the court and cause in which it is filed, but, as the purpose of the title is to identify the suit, if this appears in another way, as by reference to other papers duly entitled, it will be sufficient."    1 Enc. Pl. & Pr. 311 (1, a).    "If the affidavit is not entitled in the cause, or if the name of the case does not appear in some part of the affidavit, or the statements made therein be not sufficient to indicate to what case the affidavit relates, it could not be used as a foundation for a prosecution for perjury, and for this reason should not be received as evidence in any court in any proceeding whatsoever."    *Parks* v. *State*, 110 *Ga.* 760.    See also *Warren* v. *Monnish*, 97 *Ga.* 399, and 1 Enc. Pl. & Pr. 374.    The precise point here involved was ruled by this court in the case of *Whitley* v. *Berry*, 105 *Ga.* 251, in which it was held: "There was no error, at the interlocutory hearing of an equitable petition for an injunction and the appointment of a receiver, in refusing to admit in evidence affidavits not 'intituled in the cause' and not shown to have been taken for the purpose of being used as evidence therein."    The affidavits now under discussion did have in them numerous references to the parties and to the subject-matter of the present case, but it does not follow that the affidavits were made for the purpose of being used in this case.    This identical matter is shown by the evidence to have been agitated for some time by the plaintiffs and to have been brought by them to the attention of the town council.    So far as appears, the affidavits may have been made for use before the town council, either in the application made or in case further proceedings were there instituted.    The affidavits should have been entitled in the court and cause, or have borne affirmative intrinsic evidence that they were taken for the purpose of being used in this particular case.    They did not do this, and it was error to consider them.    The court, we think, had no discretion in this matter.    If the affidavits failed to show that they related to this particular case, they were inadmissible; if they did so show, the objection made to them was not good and should have been overruled.    In the one case they should have been excluded, and in the other not.    Thus tested, these affidavits were inadmissible in evidence, and the judge erred in considering them.

3. The case should, therefore, have been decided upon the evidence of the plaintiffs, for not only were all of the affidavits of the

defendant inadmissible, but its answer was not so verified that it could be used as evidence. The only verification of the answer was the oath of the general manager of the company, that the facts contained in the answer "are true and correct so far as they come within the knowledge of deponent, and as to the other matter deponent believes them to be true." The question presented to the judge was, then, whether the plaintiffs' evidence made out a case of a nuisance which should be enjoined by a court of equity. After carefully reading the affidavits introduced, we are clear that such a case was made out, and that the judge erred in refusing the injunction. "It is now well settled that noise alone . . may create a nuisance and be the subject of an action . . in equity for an injunction." 2 Wood, Nuisances (3d ed.), § 611. It is contended that this is not true in this State, and *Mygatt* v. *Goetchins*, 20 *Ga.* 350, is cited in support of this contention. In that case Judge Lumpkin said: "We know of no sound, however discordant, that may not, by habit, be converted into a lullaby, except the braying of an ass or the tongue of a scold." With this statement we can not profess that we entirely agree, but, if we did so, we would still think that lullabies are not usually desirable after one is wrapped in slumber, and might become an intolerable nuisance at four and five o'clock in the morning. *Mygatt* v. *Goetchins* was decided, and the judgment of the lower court affirmed, expressly upon the facts as stated in the defendant's answer. The facts set out in that answer fell far short of showing such a nuisance as was proved in the present case, and a ruling based upon them can not be controlling here. Section 3861 of the Civil Code is as follows: "A nuisance is anything that worketh hurt, inconvenience, or damage to another; and the fact that the act done may otherwise be lawful does not keep it from being a nuisance. The inconvenience complained of must not be fanciful, or such as would affect only one of fastidious taste, but it must be such as would affect an ordinary reasonable man." This, we think, is not intended to change the common-law definition of a nuisance, and is sufficient, in any case, to include the blowing of a large steam whistle, in a populous residence community, with so loud, harsh, and terrific a sound as to destroy plaintiffs' slumbers, injure their health, and seriously interfere with their reasonable enjoyment of their habitations. Certainly it is a nuisance, under the code definition or any other we have seen,

to blow such a whistle in such a manner at unreasonable and unseasonable hours and without reason or necessity therefor; and that is the case made out by the petition and the evidence of the plaintiffs. See, in this connection, 2 Wood, Nuisances, § 613 et seq.

*Judgment reversed.* *All concurring, except Cobb, J., absent.*