## A03A1375. BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA v. OGLESBY.
### (591 SE2d 417)

BARNES, Judge.

After the grant of an interlocutory appeal, the Board of Regents of the University System of Georgia challenges the superior court's order denying the Board's motions to dismiss and for summary judgment in Frances Oglesby's suit concerning the disposition of the remains of her mother, Bessie Wilborn. As we find that these claims are barred by the doctrine of sovereign immunity and the expiration of the statutes of limitation, we must reverse the trial court.

Wilborn suffered from a disfiguring condition known as Paget's disease[1] from 1943 until her death in 1949. She died at home in the presence of her thirteen-year-old sister, Lizzie Maddox, her seven-year-old only child, Oglesby, and Wilborn's caretaker at the time, a woman known as Miss Daisy. The only adult surviving Wilborn was Julia Norman, the mother of Wilborn and Maddox.

An undertaker removed Wilborn's body from her home, but no funeral or memorial service followed her death. According to Maddox, Wilborn's body was taken to a predecessor of the Medical College of Georgia ("MCG"), and not a funeral home. Wilborn died intestate.

The physician who had treated Wilborn earlier signed her death certificate listing the cause of her death as malnutrition and Paget's

---

[1] Paget's disease is a chronic skeletal disorder in which areas of bone become hyperactive, and normal bone is replaced with softened and enlarged bone.

disease, and stating that the disposition of the body was by "removal." The death certificate also stated that the physician was unable to obtain information regarding the name of the city, cemetery, or crematory where her remains were disposed.

At the time of Wilborn's illness and death, Dr. Peter B. Wright was on the faculty of the MCG. Dr. Wright wrote an article, which was published in the January 1951 issue of the Journal of Bone and Joint Surgery, entitled "An Unusual Case of Paget's Disease Presenting an Extraordinary Degree of Osteoblastic Activity."

In the article, Dr. Wright gave detailed information about Wilborn, including her medical and other history. The article also states that after her death, her body was "obtained for autopsy and physical study." The article has photographs showing that Wilborn's skin was removed, that her skull cavity separated, and that her entire skeletal remains were placed in a glass case for display. A card in the glass case states that her skeletal remains were "presented as an exhibit at the 1950 New York meeting of the American Academy of Orthopedic Surgery and received the Gold Medal Award." Wilborn's remains are maintained by the MCG's Department of Anatomy and are used in the education of medical students. Her remains have been on display for a number of years in the glass case in an anatomy laboratory at the MCG.

No one who was at the MCG in 1949 and might have personal knowledge of how MCG acquired Wilborn's remains is alive today, and MCG has no evidence regarding acquisition of Wilborn's remains other than the brief statement in Dr. Wright's article. MCG contends, however, that it has a legal right to keep Wilborn's body because it has a body donation program that complied with all applicable laws. According to the senior legal advisor for the college, Wilborn's remains were donated to the college, but no documentary evidence of such a donation is known to exist.

Oglesby states she had no indication that the college had her mother's remains until around 1989, when she had a conversation with her aunt, Maddox. According to Maddox, in the 1970s the doctor who signed the death certificate told her that MCG had Wilborn's remains, and that the remains were preserved there. The doctor showed her a photograph of her sister's remains. Maddox does not know how MCG got the remains and she does not know anyone in her family who gave permission for MCG to take the remains. In the 1980s, Maddox told Oglesby about her mother's remains being at MCG. When she heard this, Oglesby became very upset.

Oglesby left Georgia when she was 13 years old and has visited only infrequently. She learned about her mother's remains in late 1989 or the beginning of 1990 when her aunt told her on a visit to New York, but she did not believe it. Her aunt also told her that Wil-

born's remains were at MCG, and that they were doing science and teaching classes with the body. In late 1990, after she saw her mother's death certificate, she hired an attorney to investigate the matter, and in 1995 or 1996 she came down to Georgia to talk with the attorney. In 1999, she returned to Georgia specifically to inquire about her mother.

Other evidence, however, shows that Oglesby learned of the status of her mother's remains as early as 1987. For example, Oglesby wrote several letters to the MCG in the late 1980s and early 1990s requesting information about her mother's remains. Indeed, a letter that she wrote to the MCG on August 6, 1988, shows she learned the previous December that MCG had her mother's body and she requested information about her mother's illness as it might affect her health, asked to see the release for the body by a member of the family, and asked to claim the body. Consequently, this letter establishes that as early as December 1987 Oglesby knew about the disposition and retention of Wilborn's remains.

On June 26, 2000, Oglesby served ante litem notice on the Board of Regents pursuant to the Georgia Tort Claims Act ("GTCA"). In the notice, she demanded return of Wilborn's bodily remains so that she could be given a proper funeral and settlement of Oglesby's claims for intentional infliction of emotional distress, interference with possession of Wilborn's remains, interference with burial services, and mutilation of Wilborn's remains.

After the college refused to release Wilborn's remains to Oglesby unless she released her claims, she sued the Board of Regents on November 1, 2001. The Board first moved to dismiss the complaint because it was in the nature of a malpractice action and no OCGA § 9-11-9.1 affidavit was attached, and then answered denying liability. Later Oglesby amended her complaint to assert a count seeking to recover for injury to her peace, happiness, and feelings.

Subsequently, the Board moved to dismiss Oglesby's complaint for lack of subject matter jurisdiction because the complaint was barred by the doctrine of sovereign immunity. In the alternative, the Board moved for summary judgment because the statutes of limitation had expired, and also because no evidence showed that MCG had done anything wrong.

The trial court denied the motion to dismiss and the motion for summary judgment. The trial court found that the complaint alleged causes of action for trespass and interference with Oglesby's quasi-property rights, mutilation of Wilborn's remains, and intentional infliction of emotional distress, and that MCG had "failed to carry its burden of proving Plaintiff's claims are barred by sovereign immunity." The court also found that Oglesby had no indication before 1989 that MCG had the remains and no proof that MCG had the

remains until November 1999, and therefore, MCG failed to identify sufficient facts to show that Oglesby discovered or should have discovered her loss before the State's waiver of sovereign immunity. Moreover, the trial court found that MCG's refusal to return the body gave rise to the additional claims of interference with Oglesby's quasi-property rights and intentional infliction of emotional distress. The court concluded by finding that issues of fact remain on when Oglesby should have known she was injured and whether Wilborn's remains were donated.

1. Under our law as expressed in

> OCGA § 9-11-12 (b) (1), a defendant can raise a plea in abatement, which is not an adjudication on the merits, that raises the issue of the lack of subject matter jurisdiction in the trial court, but the grant of such motion only causes a dismissal of such action from the court without subject matter jurisdiction or until the condition precedent for subject matter jurisdiction has been satisfied, and the action can then be refiled. Sovereign immunity of a state agency is not an affirmative defense, going to the merits of the case, but raises the issue of the trial court's subject matter jurisdiction to try the case, and waiver of sovereign immunity "must be established by the party seeking to benefit from that waiver"; thus, the plaintiff[ ] had the burden of establishing waiver of sovereign immunity.

(Citations omitted.) *Dept. of Transp. v. Dupree*, 256 Ga. App. 668, 671 (1) (570 SE2d 1) (2002). Further, "[w]hen ruling on a motion to dismiss based upon jurisdictional grounds, the trial court must make the determination acting as the trier of fact. Its evaluation rests on where the preponderance of evidence lies, not necessarily on whether the issue may be decided as a matter of law." (Citations omitted.) Id. at 676.

Therefore, to pursue this action Oglesby must establish by a preponderance of the evidence that the State has waived its sovereign immunity. On appeal, the Board first contends that MCG is a state agency, see *Bd. of Regents &c. of Ga. v. Frost*, 233 Ga. App. 692, 694 (1) (505 SE2d 236) (1998), and consequently, Oglesby's claims are barred by sovereign immunity, even though the trial court ruled that Oglesby's claims are governed by the GTCA, OCGA § 50-21-20 et seq. The Board contends this decision is wrong because the GTCA does not apply to tort claims that accrued before January 1, 1991.

In its ruling, the trial court looked to OCGA § 50-21-27 (a), which states that "[a] tort claim or cause of action shall be deemed to have accrued on the date the loss was or should have been discovered."

Therefore, the court ruled that because Oglesby had no reason to know of her injury until October or November 1999, particularly because the MCG did not respond to inquiries, her cause of action did not accrue until then. Consequently, the trial court found that her claims are subject to the GTCA and are not barred by sovereign immunity. These findings are not supported by the evidence set forth above.

Whether MCG properly or improperly obtained Wilborn's body, the body was obtained in 1949, an autopsy conducted in 1949, and the remains prepared for display no later than 1950. At that time the doctrine of sovereign immunity applied to the State and its agencies, see *Crowder v. Dept. of State Parks*, 228 Ga. 436 (185 SE2d 908) (1971), and the GTCA does not apply to tort claims or causes of action that accrued before January 1, 1991. OCGA § 50-21-27. Unless waived, sovereign immunity protects all levels of government from lawsuits. *Cameron v. Lang*, 274 Ga. 122, 126 (3) (549 SE2d 341) (2001).

"[A] cause of action in negligence accrues . . . when there is a negligent act coupled with a proximately resulting injury[,]" *U-Haul Co. &c. v. Abreu & Robeson, Inc.*, 247 Ga. 565, 566 (277 SE2d 497) (1981), and "[t]he true test to determine when a cause of action accrues is to ascertain the time when the plaintiff could first have maintained her action to a successful result. Id." (Emphasis omitted.) *Travis Pruitt & Assoc. v. Bowling*, 238 Ga. App. 225, 226 (1) (518 SE2d 453) (1999). Consequently, any cause of action arising from the treatment of Wilborn's body accrued in 1949.

In this case, even if we were authorized to apply the discovery rule,[2] Oglesby's claims still are barred because the record shows that Oglesby was aware that MCG had possession of her mother's remains in 1987. Even under the "discovery rule," the right of action accrues when the injured person discovers the cause of his or her injury. *Everhart v. Rich's, Inc.*, 229 Ga. 798, 802 (2) (194 SE2d 425) (1972). Therefore, we find that the trial court erred by applying the GTCA to Oglesby's claims and finding that sovereign immunity was waived. Accordingly, Oglesby's claims must be dismissed. "The GTCA represents a waiver of the State's sovereign immunity, limited in extent and manner. As such its provisions should be narrowly construed. [Cits.]" *Doe #102 v. Dept. of Corrections*, 268 Ga. 582, 583 (2) (492 SE2d 516) (1997).

2. Moreover, even if we were to find that these claims were not subject to the doctrine of sovereign immunity, we would find that the

---

[2] The discovery rule is limited "to cases of bodily injury which develop only over an extended period of time." (Citation and punctuation omitted.) *Corp. of Mercer Univ. v. Nat. Gypsum Co.*, 258 Ga. 365, 366 (1) (368 SE2d 732) (1988).

claims were barred by the general statutes of limitation and by the limitations provisions in the GTCA.

In its argument on the motion for summary judgment, the Board asserted that Oglesby has no cause of action against the college 50 years after the fact for mishandling her mother's corpse, even though at the time of Wilborn's death, Oglesby was a minor and did not have the capacity to direct the manner of disposal of her mother's remains. The only person with that capacity at that time was Wilborn's mother, Norman, who was the only adult surviving next of kin. If Norman's wishes were not followed in this regard, then she theoretically had a cause of action against the college for mishandling of the corpse. See *Wages v. Amisub of Ga.*, 235 Ga. App. 156, 157 (1) (508 SE2d 783) (1998).

(a) Nevertheless, under OCGA § 9-3-90 (a),[3] Oglesby's cause of action in turn would have accrued when she reached the age of majority. The time when Oglesby achieved her majority, however, had long passed when she filed this action, and was far beyond the two-year period of limitations for bringing personal injury actions established in OCGA § 9-3-33. *Bauer v. North Fulton Med. Center*, 241 Ga. App. 568, 569 (2) (527 SE2d 240) (1999). Oglesby's claim for intentional infliction of emotional distress, of course, is subject to OCGA § 9-3-33. Id. In the same manner, any claim that Wilborn's estate may have possessed is also time-barred. See OCGA § 9-3-92.

(b) Oglesby's claims based on MCG's possession and handling of her mother's body that arise from her personal, quasi-property right in her mother's body to ensure its proper handling and burial, however, are subject to the four-year period of limitations in OCGA § 9-3-32.[4] *Bauer v. North Fulton Med. Center*, supra, 241 Ga. App. at 569 (3).

> [A] claim for negligent mishandling of a corpse is premised upon the presence of two elements. The first is the "quasi-property" right that exists in the dead body of a relative. The second is the negligent breach of a contract to carry out the expressed wishes of the next of kin regarding the disposition of that dead body, i.e., burial, cremation, or anatomical donation.

(Citations and punctuation omitted.) *Wages v. Amisub of Ga.*, supra, 235 Ga. App. at 157 (1). These claims are time-barred because

---

[3] "Minors and persons who are legally incompetent because of mental retardation or mental illness, who are such when the cause of action accrues, shall be entitled to the same time after their disability is removed to bring an action as is prescribed for other persons."

[4] "Actions for the recovery of personal property, or for damages for the conversion or destruction of the same, shall be brought within four years after the right of action accrues."

Oglesby did not bring her action against MCG within the period of limitations. As discussed in Division 1, Oglesby was aware that MCG had possession of her mother's body as early as December 1987 and retained an attorney about the matter in 1990, but did not file this action until November 1, 2001.

Finally, even if we were somehow authorized to apply the GTCA to these claims, Oglesby cannot bring an action under the act because she did not give timely notice of her claim in writing within 12 months of the date her loss was discovered. OCGA § 50-21-26 (a) (1). Thus, her claims would be barred by OCGA § 50-21-26 (a) (3).

(c) We note that any concern about the continued display of Wilborn's remains should have been resolved by MCG's unconditional offer to return the remains to Oglesby. The offer stated its intention to begin the process of returning the remains to Oglesby, stated MCG's intention to procure a casket for the remains, asked Oglesby to state her preferences regarding the casket, and asked her to identify the funeral home to which the casket should be transported for burial. Although Oglesby then declined the offer because she wished to display the remains to a jury, in view of our disposition of this case, she may wish to reconsider that decision, and we anticipate that MCG would honor its earlier unconditional offer.

The judgment of the trial court must be reversed and the case remanded to the trial court with direction to dismiss Oglesby's complaint.

*Judgment reversed with direction. Andrews, P. J., and Adams, J., concur.*

DECIDED NOVEMBER 21, 2003 —
RECONSIDERATION DENIED DECEMBER 9, 2003 —

*Thurbert E. Baker, Attorney General, Kathleen M. Pacious, Deputy Attorney General, Loretta L. Pinkston, Senior Assistant Attorney General, Perrie & Cole, Robert L. Bunner*, for appellant.

*Elliott B. Watkins*, for appellee.