**THIRD DIVISION
MCFADDEN, C. J.,
DOYLE, P. J., and HODGES, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**October 29, 2020**

# In the Court of Appeals of Georgia

A20A0784. DOE v. SAINT JOSEPH'S CATHOLIC CHURCH et al.    DO-028

DOYLE, Presiding Judge.

In 2018, Philip Doe sued Archbishop Wilton Gregory, the Archdiocese of Atlanta, and Saint Joseph's Catholic Church based on alleged childhood sexual abuse he suffered while he was an altar boy at Saint Joseph's Church in the late 1970s. Doe alleged that the defendants committed several torts, including maintaining a public nuisance plus a violation of the Georgia Racketeer Influenced and Corrupt Organizations ("RICO") Act.[1] The defendants moved to dismiss Doe's complaint pursuant to OCGA § 9-11-12 (b) (6), arguing that it was time-barred, and the trial court granted the motion. Doe now appeals, contending that the trial court erred in its rulings that (1) his non-nuisance tort and RICO claims were time-barred under OCGA

---

[1] OCGA § 16-14-1 et seq.

§ 9-3-33.1, and (2) the defendants' conduct in allegedly concealing the presence of sex offenders in their clergy does not constitute a public nuisance under the law. For the reasons that follow, we affirm.

> We review a trial court's ruling on a motion to dismiss de novo. Our role is to determine whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, and with all doubts resolved in the plaintiff's favor, disclose with certainty that the plaintiff would not be entitled to relief under any state of provable facts.[2]

Doe's verified complaint alleges that he was a parishioner at Saint Joseph's Church and served there as an altar boy from the approximate ages of 12 to 15. During this time, Doe was supervised by Father J. Douglas Edwards, who was a priest assigned to Saint Joseph's Church by the Archdiocese of Atlanta. Doe alleges that Edwards sexually molested him approximately eight to ten times during the years 1976 to 1978. Doe experienced shame, anger, and depression as a result of the abuse, and he did not confront Edwards or the church at the time of the abuse.

In November 2018, the Archbishop of Atlanta — Wilton Gregory — issued a public statement acknowledging and apologizing for "the damage that young lives

---

[2] (Footnotes and punctuation omitted.) *Wolf Creek Landfill, LLC v. Twiggs County*, 337 Ga. App. 211, 211-212 (786 SE2d 862) (2016).

have suffered" due to sexual abuse by Catholic clergy. The statement was accompanied by a list of "credibly accused clergy," which included Edwards and shows that prior to his 1975-1981 tenure at Saint Joseph's, Edwards held positions at nine different Catholic churches over fourteen years, plus a two-year leave of absence. According to the list, Edwards died in 1997.

Upon learning about the statement and the naming of Edwards as a "credibly accused" clergy member, Doe filed the present action against Archbishop Gregory, the Archdiocese of Atlanta, and Saint Joseph's church. Doe's complaint, as amended, seeks to establish liability on the part of the defendants for maintaining a public nuisance (Counts 1 and 2); failure to train, supervise, and monitor clergy (Count 3); negligent retention (Count 4); failure to warn (Count 5); failure to provide security (Count 6); respondeat superior (Count 7); breach of fiduciary duty (Count 8); fraudulent misrepresentation and concealment (Counts 9 and 10); and RICO violations (Count 11). The defendants answered and moved to dismiss Doe's complaint on the ground that it was time-barred. Following a hearing, the trial court entered an order granting the motion to dismiss, giving rise to this appeal.

1. In multiple enumerations of error, Doe argues that the trial court erred by ruling that his non-nuisance claims were time-barred. Based on the claims at issue and the statutory time limitations on their viability, we disagree.

(a) *Applicability of OCGA § 9-3-33.1*. We begin by noting that the trial court ruled that OCGA § 9-3-33.1 acts as a statute of repose and bars Doe's non-nuisance tort claims (Counts 3 through 10). OCGA § 9-3-33.1 (a) (2) provides that "any civil action for recovery of damages suffered as a result of childhood sexual abuse committed before July 1, 2015, shall be commenced on or before the date the plaintiff attains the age of 23 years." The subsection defines "childhood sexual abuse" as "any act *committed by the defendant against the plaintiff*" that would constitute a criminal offense of rape, sodomy, child molestation, pandering, sexual battery, or other similar enumerated crimes.[3] Thus, under this Code section, the time limit applies to actions for recovery of damages suffered as a result of conduct by the defendant that are sex-based crimes.[4]

---

[3] (Emphasis supplied.) OCGA § 9-3-33.1 (a) (1) (listing the covered offenses).

[4] See generally *Deal v. Coleman*, 294 Ga. 170, 173 (1) (a) (751 SE2d 337) (2013) ("[I]f the statutory text is 'clear and unambiguous,' we attribute to the statute its plain meaning, and our search for statutory meaning is at an end."), citing *Opensided MRI of Atlanta v. Chandler*, 287 Ga. 406, 407 (696 SE2d 640) (2010).

4

Here, Doe does not allege that any of the named defendants (Archbishop Gregory, the Archdiocese of Atlanta, and Saint Joseph's church) engaged in conduct against him that was a criminal offense listed in OCGA § 9-3-33.1 (a) (1).[5] None of the defendants' alleged conduct amounts to child molestation or other listed sex crime, so the present action is not one seeking damages for "childhood sexual abuse" as defined in the statute. Rather, as Doe explains, it is an action more broadly based on the defendants' breach of duties they owed to him to protect him as a minor and parishioner and the defendants' conduct in allegedly covering up the abuse. Accordingly, OCGA § 9-3-33.1 does not apply, and any argument that it operated as a statute of repose is inapposite in this case.

(b) *Application of statute of limitation*. Given that the specific rule in OCGA § 9-3-33.1 does not apply, we turn to the default statute of limitation. Although Doe's complaint alleges several different non-nuisance torts, his injuries are to his person

---

[5] The sole exception would be Count 7, which alleges liability on a respondeat superior/vicarious liability ground. To the extent that Count 7 imputes liability to the defendants for Edwards's conduct, that claim is time-barred by OCGA § 9-3-33.1 because it was not filed before Doe turned 23 years old.

5

(as opposed to a property interest), so we look to the two-year statute of limitation for injuries to the person.[6]

> The statute of limitation begins to run on any given claim on the date the claim accrues — in other words, on the date that suit on the claim can first be brought. When the question is raised as to whether an action is barred by a statute of limitations, the true test to determine when the cause of action accrued is to ascertain the time when the plaintiff could first have maintained his action to a successful result.[7]

Under this rule, Doe was a minor when his injuries occurred. According to the complaint, Doe was last molested in 1978 (when he was still a minor), and at that time he had suffered a legally cognizable injury as a result of the defendants' breach of their alleged duties to him by failing to train, supervise, and monitor Edwards (Count 3); negligently retaining Edwards (Count 4); failing to warn Doe (Count 5);

---

[6] See, e.g., OCGA § 9-3-33 (establishing a two-year statute of limitation for injuries to person with two exceptions inapplicable to this case); *Villanueva v. First American Title Ins. Co.*, 292 Ga. 630, 632 (740 SE2d 108) (2013) ("[T]his Court determined that 'injuries done to the person' included 'all actionable injuries to the individual himself,' citing physical and bodily injury, injury to the reputation, false imprisonment, malicious arrest, and injury to one's health, in contrast to injury done to the person's property."), quoting *Hutcherson v. Durden*, 113 Ga. 987, 989-990 (39 SE 495) (1901).

[7] (Punctuation omitted.) *Hoffman v. Ins. Co. of North America*, 241 Ga. 328, 329 (245 SE2d 287) (1978), quoting *Mobley v. Murray County*, 178 Ga. 388 (1) (173 SE 680) (1934).

failing to provide proper security (Count 6); acting as a vicariously liable employer (Count 7); breaching alleged fiduciary duties owed to Doe (Count 8); and fraudulently misrepresenting or concealing information regarding Edwards's employment or conduct (Count 9, alleging tolling of the statute of limitations). Thus, as to those counts, his cause of action had accrued against the defendants named in this suit when he was molested by Edwards in 1978.[8]

Because Doe was a minor in 1978, the running of any statute of limitation would be tolled until he reached 18 years of age.[9] According to Doe's complaint, he reached the age of majority in 1982, so absent any additional tolling, the applicable statute of limitation would have begun running then, and the non-nuisance counts would have expired long before he filed this action in 2018.[10] Thus, the viability of

---

[8] See *Long v. Marino*, 212 Ga. App. 113, 113-114 (1) (441 SE2d 475) (1994) (affirming the grant of summary judgment because the last occurrence of sexual abuse was more than two years before the action was filed, so the tort claim was time-barred under the two-year statute of limitation under OCGA § 9-3-33).

[9] See OCGA § 9-3-90 (b) ("Except as otherwise provided in Code Section 9-3-33.1, individuals who are less than 18 years of age when a cause of action accrues shall be entitled to the same time after he or she reaches the age of 18 years to bring an action as is prescribed for other persons.").

[10] See *Bd. of Regents v. Oglesby*, 264 Ga. App. 602, 607 (2) (a) (591 SE2d 417) (2003) ("[The plaintiff's] cause of action . . . would have accrued when she reached the age of majority. The time when [the plaintiff] achieved her majority, however, had

7

Doe's non-nuisance tort claims depends on whether the statute of limitation for those claims was tolled.

(c) *Tolling of statute of limitation*. Doe argues that the statute of limitation should have tolled until 2018, when he first learned that the defendants allegedly knew of Edwards's predatory conduct and had allegedly covered up this knowledge — presumably evidenced by the fact that Edwards held nine different positions plus a leave of absence over the fourteen years leading up to his placement at Saint Joseph's church.

Under OCGA § 9-3-96, "[i]f the defendant or those under whom he claims are guilty of a fraud by which the plaintiff has been debarred or deterred from bringing an action, the period of limitation shall run only from the time of the plaintiff's discovery of the fraud." Here, under the facts alleged in the complaint, Doe knew he had been injured, he knew the identity of the perpetrator, and he was aware of the church's inaction. Doe's lack of knowledge of the defendants' alleged awareness of Edwards' misconduct did not render his tort claims inchoate or otherwise inactionable, even assuming, as Doe argues, that he held a confidential relationship

long passed when she filed this action . . . and was far beyond the two-year period of limitations for bringing personal injury actions established in OCGA § 9-3-33.").

8

with the defendants. Tolling is triggered by a fraud that "conceals a wrong done to a would-be plaintiff so as to deter or debar the would-be plaintiff from his or her cause of action, i.e., prevent it from being pursued, and therefore, coming into existence."[11] There is no question that the facts alleged by Doe implicate the defendants in a fraud "involv[ing] moral turpitude,"[12] but to toll the statute of limitation, the fraud must have prevented Doe from pursuing his claims.[13] When Edwards abused Doe, Doe was aware at that time that the church had breached its duties to him by hiring Edwards, exposing Doe to Edwards, and failing to protect Doe from Edwards. The defendants' alleged conduct in tolerating this abuse and keeping it secret from the public and parishioners did not, as a legal matter, debar Doe from pursuing the tort claims at issue. That the defendants might have asserted a defense that they were unaware of Edwards's predatory conduct did not preclude Doe from maintaining the tort claims against the defendants before the statute of limitations ran on those claims. Although Archbishop Gregory's 2018 statement appears to indicate that such a defense would

---

[11] *Rai v. Reid*, 294 Ga. 270, 273 (751 SE2d 821) (2013).

[12] *Shipman v. Horizon Corp.*, 245 Ga. 808 (267 SE2d 244) (1980).

[13] See *Rai*, 294 Ga. at 273.

9

have been unavailing, this does not mean that Doe's non-nuisance tort claims were viable for the first time in 2018.

(d) *Statute of limitation as to RICO claims*. The application of the RICO statute of limitation was explained by this Court in *Glock, Inc. v. Harper*.[14]

> OCGA § 16-14-8 provides a five-year statute of limitation for a civil action brought for RICO violations. That statute was revised, effective July 1, 2015, to provide that a civil action "shall be commenced up until five years after the conduct in violation of a provision of this chapter terminates." Before that revision, OCGA § 16-14-8 provided that such a civil action had to be brought within five years after the conduct terminated "or the cause of action accrues."
>
> Regarding the pre-July 1, 2015 version of OCGA § 16-14-8, this Court[, in *Blalock v. Anneewakee, Inc.*,[15]] determined that "the statute of limitation begins to run when the civil RICO cause of action accrues, which we interpret to mean when the plaintiff discovers, or reasonably should have discovered, that he has been injured and that his injury is part of a pattern." The pattern discovery element has since been questioned, but otherwise *Blalock* stated the proper application of the civil RICO statute of limitation prior to the July 1, 2015 revision.[16]

---

[14] 340 Ga. App. 65 (796 SE2d 304) (2017).

[15] 206 Ga. App. 676, 678 (1) (426 SE2d 165) (1992).

[16] *Glock, Inc.*, 340 Ga. App. at 66 (2).

10

Here, as in *Blalock*, Doe knew that he was injured by a pattern of misconduct when the sexual abuse began and continued for three years while the church did nothing about it. Had Doe sued the defendants in 1978, based on the same abuse and the same inaction by the church, his action would have had no less viability than it did in 2018. By the time he reached the age of majority, Doe was aware that the church was openly recruiting new members and minors despite the clergy's predation on him. Thus, the ongoing nature of the abuse from 1975-1978 sufficiently established a pattern of conduct such that Doe's RICO action had accrued, and the statute of limitation ceased tolling at the time he reached the age of majority in 1982.[17] Accordingly, the trial court correctly ruled that the RICO claims are time-barred.

---

[17] See *Blalock*, 206 Ga. App. at 678 (1) (holding that the RICO claims accrued by the time the plaintiff reached 18 because the plaintiff "should have been aware that the physical and sexual abuses he was subjected to over the course of his [3]-year stay at [the defendant youth treatment center] were part of a pattern of unlawful behavior by the operators of [the center].").

2. Doe also asserted a claim for public nuisance, which is not governed by a traditional statute of limitation.[18] Doe contends that the trial court erred by ruling as a matter of law that he failed to state a claim for public nuisance.[19] We disagree.

Under OCGA § 41-1-2, "[n]uisances are either public or private. A public nuisance is one which damages all persons who come within the sphere of its operation, though it may vary in its effects on individuals. A private nuisance is one limited in its injurious effects to one or a few individuals."[20] A public nuisance "does

---

[18] See *Davis v. City of Forsyth*, 275 Ga. App. 747, 750 (2) (621 SE2d 495) (2005) ("The statute of limitations does not run in favor of public nuisances because of the impropriety of imputing laches to the public.") (punctuation omitted).

[19] See generally *Northway v. Allen*, 291 Ga. 227, 229 (728 SE2d 624) (2012) ("The main consideration of such a motion to dismiss is 'whether, under the assumed set of facts, a right to some form of legal relief would exist'" for the claim asserted.). We note that "[m]ore than 100 years ago, the Supreme Court of Georgia held that this statutory definition, which has remained virtually unchanged since 1863, was 'not intended to change the common-law definition of a nuisance.'" *City of Albany v. Stanford*, 347 Ga. App. 95, 101 n.10 (815 SE2d 322) (2018) (physical precedent only), Gobeil, J., concurring fully and specially, quoting *Hill v. McBurney Oil & Fertilizer Co.*, 112 Ga. 788, 793 (3) (38 SE 42) (1901). In this appeal, Doe does not make a material distinction between the statutory and common law public nuisance claims, and we resolve both the common law and statutory claims together.

[20] See generally *Cox v. De Jarnette*, 104 Ga. App. 664, 674 (2) (123 SE2d 16) (1961) ("There is perhaps no more impenetrable jungle in the entire law than that which surrounds the word 'nuisance.' It has meant all things to all men, and has been applied indiscriminately to everything from an alarming advertisement to a cockroach baked in a pie. There is general agreement that it is incapable of any exact or

12

not mean that the condition allegedly causing the [public] nuisance must have actually hurt or injured everyone in the area, but it does mean that it must injure those of the public who actually come in contact with it."[21]

Here, Doe alleges that the defendants' conduct of concealing the presence of sex offenders within the clergy constituted a public nuisance by endangering the public and "misleading them about the wholesomeness and safety of the Church's activities. . . ." With respect to the direct injury caused by molestation, Doe does not allege that all or even most people who came into contact with the church experienced this injury. Thus, the alleged molestation itself was not sufficient to constitute a public nuisance, even if there were multiple victims over multiple years.[22]

---

comprehensive definition.") (punctuation omitted), quoting Prosser, Law of Torts, 2d Ed. § 70, p. 389.

[21] (Punctuation omitted.) *White v. Ga. Power Co.*, 265 Ga. App. 664, 668 (2) (595 SE2d 353) (2004), citing *City of Douglasville v. Queen*, 270 Ga. 770, 774 (514 SE2d 195) (1999) ("'A public nuisance exists if the act complained of affects rights which are common to all within a particular area.'"). Compare *Atlanta Processing Co. v. Brown*, 227 Ga. 203, 206-207 (1) (b) (179 SE2d 752) (1971) (holding that the plaintiff stated a claim for public nuisance based on noxious odors wafting from an animal processing plant); *Watkins v. Pepperton Cotton Mills*, 162 Ga. 371, 374 (134 SE 69) (1926) ("An illustration of a public nuisance is the unauthorized placing of an obstacle across a public highway.").

[22] See, e.g., *White*, 265 Ga. App. at 668 (2) (holding that a hazardous boat ramp was not a public nuisance because it did not harm all who came into contact with it).

13

Further, although Doe points to the moral failing of the church, he does not allege that church operations had an appreciable blighting effect on the surrounding community, such as a gambling establishment or unlicensed liquor store.[23] As Doe alleges, the church openly operated as a wholesome place of worship and moral instruction, while secretly concealing certain predatory conduct by clergy. The effect of this conduct, if proven, certainly would demonstrate terrible injury to the victims of the abuse, but it did not harm all persons who came into the sphere of church operations. In fact, as alleged by the complaint, the public and church community were unaware of the injuries inflicted by the clergy. This allegation of hidden abuse reflects a grave hypocrisy by church leaders, but the church operations, as alleged, did not invite, for example, "idleness, loitering, vagrancy, and . . . a tendency to breed crime and

---

[23] See, e.g., *Cronic v. State*, 222 Ga. 623, 623-624 (1) (151 SE2d 448) (1966) (business selling alcohol without a license was alleged to invite "persons of questionable character; that said business establishment encourage[d] idleness, loitering, vagrancy, and ha[d] a tendency to breed crime and debauch the morals of the community"); *Gullatt v. State*, 169 Ga. 538, 542 (150 SE 825) (1929) ("the maintenance of a gaming-house or a gaming-place is a public nuisance"); *Chancey v. Hancock*, 233 Ga. 734, 734 (213 SE2d 633) (1975) (operating a "blind tiger" or unlicensed liquor store was alleged to have "'encourage[d] idleness, loitering, vagrancy and ha[d] a tendency to breed crime and debauch the morals of the community'").

14

debauch the morals of the community."[24] Accordingly, based on the allegations in the complaint, the trial court did not err by concluding that Doe failed to state a claim for public nuisance.

*Judgment affirmed. Hodges, J. concurs. McFadden, C. J., , dissents.*

---

[24] *Chancey*, 233 Ga. at 734.

A20A0784. DOE v. SAINT JOSEPH'S CATHOLIC CHURCH et al.


MCFADDEN, Chief Judge, dissenting.

The majority would affirm the dismissal of this action, which arises out of the Catholic Church's child sex abuse scandal. It has been brought against the Archdiocese of Atlanta and others for fraudulently concealing that predation by shuffling predatory priests from parish to parish. I respectfully dissent from Division 1 (c) of the majority opinion, which holds that the statute of limitations was not subject to the fraud tolling provision, OCGA § 9-3-96. Consequently, although I agree with the rest of the majority's analysis, I disagree with its judgment and would reverse.

OCGA § 9-3-96 provides: "If the defendant or those under whom he claims are guilty of a fraud by which the plaintiff has been debarred or deterred from bringing an action, the period of limitation shall run only from the time of the plaintiff's discovery of the fraud." The majority holds the statute inapplicable, reasoning that under the allegations "in the complaint, Doe knew he had been injured, he knew the identity of the perpetrator, and he was aware of the church's inaction" and consequently that the archdiocese's conduct "did not, as a legal matter, debar Doe from pursuing the tort claims at issue." The majority goes on to hold that the fact that the archdiocese

> might have asserted a defense that they were unaware of Edwards's predatory conduct did not preclude Doe from maintaining the tort claims against the defendants before the statute of limitations ran on those claims. Although Archbishop Gregory's 2018 statement appears to indicate that such a defense would have been unavailing, this does not mean that Doe's non-nuisance tort claims were viable for the first time in 2018.

In support of its analysis, the majority cites *Rai v. Reid*, 294 Ga. 270, 273 (751 SE2d 821) (2013) and *Shipman v. Horizon Corp.*, 245 Ga. 808 (267 SE2d 244) (1980). I disagree with that analysis and see nothing in those cases to support it.

The plain meaning of "debar" standing alone would support the majority's analysis. See DEBAR, Black's Law Dictionary (11th ed. 2019) ("debar vb. (15c) To

2

officially prohibit or exclude (someone) from doing, attaining, or having (something), or from entering a place or condition; to shut out, prevent, or interdict by authority."). But the the statute says "debarred or deterred," and the plain meaning of "deter" refutes that analysis. See DETERRENCE, Black's Law Dictionary (11th ed. 2019) ("deterrence n. (1861) The act or process of discouraging certain behavior, particularly by fear; esp., as a goal of criminal law, the prevention of criminal behavior by fear of punishment.").

As for the cases the majority cites, they set out the scope of OCGA § 9-3-96. *Shipman* held, and *Rai* reaffirmed, that it is applicable

> in two different circumstances: (1) where the actual fraud is the gravamen of the action, and there is tolling until the fraud is discovered or by reasonable diligence should have been discovered and no other independent fraudulent act is required; and (2) where the gravamen of the action is other than actual fraud, in which case a separate independent actual fraud involving moral turpitude which debars and deters the plaintiff from bringing his action must be shown.

*Rai*, 294 Ga. at 271.

In *Rai*, which was transferred to the Supreme Court because this court split evenly, 6 to 6, the Court held that the claim fell into neither category. Defendant Rai had hired someone to murder his daughter-in-law. Ruling out the first circumstance, the Court held that concealment was "but part and parcel of Rai's murder-for-hire

3

plan" and so "actual fraud is not the gravamen of the wrongful death action.**"** *Rai*, 294 Ga. at 272 (1). Rather, the *Rai* case was properly analyzed "under the second *Shipman* circumstance in which the gravamen of the action is other than actual fraud. But, the claim fails under this analysis as well." *Rai*, 294 Ga. at 273 (1). It failed because the concealment was not "distinct from the murder conspiracy." Id. at 274 (1).

Here the gravamen of the claim against the archdiocese is its allegedly fraudulent conduct. There is no doubt that archdiocese's conduct is distinct from the ex-priest's predation. So I think the first circumstance obtains, the fraud tolling statute applies, and the claim is entitled to survive the pleading stage.

4