# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### April 4, 2018 Session Heard at Jackson

## DAVID R. SMITH v. THE TENNESSEE NATIONAL GUARD

**Appeal by Permission from the Court of Appeals**
**Circuit Court for Davidson County**
**No. 16C-12   Thomas W. Brothers, Judge**

_____

### No. M2016-01109-SC-R11-CV

_____

In 2014, the General Assembly enacted a statute waiving Tennessee's sovereign immunity for claims brought against the State pursuant to the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. §§ 4301 to 4335 ("USERRA").  The waiver of sovereign immunity became effective on July 1, 2014, and applied to USERRA claims "accruing on or after" that date.  After passage of the statute, the plaintiff brought a USERRA claim against the defendant, an entity of the State, but his claim was based on facts that occurred prior to August 8, 2011.  The trial court dismissed the claim, explaining that the claim accrued prior to July 1, 2014, and remained barred by sovereign immunity.  The Court of Appeals reversed, holding that the claim accrued on July 1, 2014, when the plaintiff gained a judicial remedy by the enactment of the statute waiving sovereign immunity.  We conclude that the claim accrued prior to July 1, 2014, and remains barred by sovereign immunity.  Accordingly, we reverse the judgment of the Court of Appeals and reinstate the judgment of the trial court.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Reversed; Judgment of the Trial Court Reinstated**

CORNELIA A. CLARK, J., delivered the opinion of the Court, in which SHARON G. LEE, HOLLY KIRBY, and ROGER A. PAGE, JJ., joined.  JEFFREY S. BIVINS, C.J., not participating.

Herbert H. Slatery III, Attorney General and Reporter; Andrée Blumstein, Solicitor General; and Jay C. Ballard, Deputy Attorney General, for the appellant, The Tennessee National Guard.

Phillip L. Davidson, Brentwood, Tennessee, for the appellee, David R. Smith.

**OPINION**

**I. Factual and Procedural Background**[1]

David R. Smith is a former Lieutenant Colonel in the Tennessee National Guard ("the Guard"). The Guard "is a division of the Tennessee Military Department; thus, it is an entity of the State of Tennessee." Smith v. Tenn. Nat'l Guard, 387 S.W.3d 570, 576 (Tenn. Ct. App. 2012), perm. app. denied (Tenn. Nov. 21, 2012) ("Smith I") (citing Tenn. Code Ann. § 58-1-201 et seq.).

Mr. Smith joined the Guard in 1993 as "a traditional guardsman." In February 2002, he was selected for a full-time position in the Active Guard Reserve ("AGR"). Seven years later, in 2009, Mr. Smith applied for senior developmental education at the Naval War College in Washington, D.C., and he was accepted. The Guard required Mr. Smith to leave his full-time AGR position when he began attending the Naval War College on an active duty tour on July 6, 2010.

On April 24, 2011, Mr. Smith wrote the Guard advising that he was ending his tour at the Naval War College and requesting to know his next assignment. Three days later, on April 27, 2011, the Guard informed Mr. Smith that no position was available but that he could obtain "a traditional guardsman's position" on his return. Mr. Smith was not rehired to the AGR and was "separated" from it on July 10, 2011.[2]

On August 8, 2011, Mr. Smith sued the Guard, alleging that it had violated his rights under the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. §§ 4301 to 4335 ("USERRA"). Smith I, 387 S.W.3d at 572-73. USERRA is a federal law intended to provide job security for armed services members.[3]

---

[1] This is the third appeal involving these parties and these allegations. See Smith v. Tenn. Nat'l Guard, 387 S.W.3d 570 (Tenn. Ct. App. 2012), perm. app. denied (Tenn. Nov. 21, 2012) ("Smith I"); Smith v. Tenn. Nat'l Guard, No. M2014-02375-COA-R3-CV, 2015 WL 3455448, at *1 (Tenn. Ct. App. May 29, 2015), perm. app. denied (Tenn. Sept. 17, 2015) ("Smith II"); Smith v. Tenn. Nat'l Guard, No. M2016-01109-COA-R3-CV, 2017 WL 1207881, at *1 (Tenn. Ct. App. Mar. 31, 2017), perm. app. granted (Tenn. Aug. 17, 2017) ("Smith III"). This factual summary derives solely from the allegations of the complaint, which are taken as true for purposes of this appeal from the trial court's order granting a motion to dismiss for failure to state a claim. Moore-Pennoyer v. State, 515 S.W.3d 271, 275-76 (Tenn. 2017).

[2] Whether Mr. Smith returned to "a traditional guardsman's position" is not entirely clear from the allegations of the complaint.

[3] Congress first enacted legislation to protect the employment rights of veterans in 1940, in response to thousands of unemployed World War I veterans marching in the streets of Washington, D.C. in 1933, demanding payments owed them. Cecily Fuhr, Causes of Action for Employment Discrimination Based on Military Service under the Uniformed Services Employment and Reemployment

USERRA includes four key provisions: (1) "it guarantees returning veterans a right of reemployment after military service"; (2) "it prescribes the position to which such veterans are entitled upon their return"; (3) "it prevents employers from discriminating against returning veterans on account of their military service"; and (4) "it prevents employers from firing without cause any returning veterans within one year of reemployment." Petty v. Metro. Gov't of Nashville-Davidson Cnty., 538 F.3d 431, 439 (6th Cir. 2008) (citations omitted). Mr. Smith alleged that the Guard had violated USERRA by denying him reemployment in the AGR after he returned from his active duty tour at the Naval War College. Smith I, 387 S.W.3d at 573.

The Guard moved to dismiss Mr. Smith's lawsuit for lack of subject matter jurisdiction based on its sovereign immunity as a State entity. Id. The trial court granted the motion to dismiss, and the Court of Appeals affirmed. Id. at 572.

In affirming the dismissal, the Court of Appeals pointed out that, while USERRA authorizes a private person to bring a cause of action in state court "against a state as an employer," USERRA also specifies that jurisdiction in state court for such a cause of action must be "*in accordance with the laws of the State.*" Id. at 574 (citing 38 U.S.C. § 4323(b)(2)) (emphasis added). Like courts in other jurisdictions, the Court of Appeals interpreted this language as authorizing a private cause of action against a state employer in state court only if the state has waived sovereign immunity for USERRA claims. Smith I, 387 S.W.3d at 574-75.[4] The Court of Appeals concluded that Tennessee had not

---

Rights Act (USERRA), in 47 Causes of Action 2d 1 (2011 & May 2018 Supp.) (citing Andrew P. Sparks, Note, From the Desert to the Courtroom: The Uniformed Services Employment and Reemployment Rights Act, 61 Hastings L.J. 773 (2010)). Congress enacted USERRA on October 13, 1994, in response to concerns about veterans' and reservists' employment difficulties after the first Gulf War. Id.

[4] See also Larkins v. Dep't of Mental Health and Mental Retardation, 806 So. 2d 358, 363 (Ala. 2001) (affirming dismissal of the USERRA claim based on sovereign immunity and stating that "Congress's deference to state laws includes a [S]tate's law dealing with its immunity from suit"); Janowski v. Div. of State Police, Dep't of Safety and Homeland Sec., 981 A.2d 1166, 1170-71 (Del. 2009) (interpreting the statutory text "in accordance with the laws of the State" as including "determinations about whether, when, and under what circumstances to waive sovereign immunity explicitly," holding that the Delaware legislature had not explicitly waived its immunity from suits under USERRA, and affirming the trial court's dismissal); Anstadt v. Bd. of Regents, 693 S.E.2d 868, 872 (Ga. 2010) (using a similar analysis to conclude that a USERRA claim against Georgia is only permissible to the extent the state has explicitly waived its sovereign immunity); Clark v. Virginia Dep't of State Police, 793 S.E.2d 1, 7 (Va. 2016) (holding that sovereign immunity barred the plaintiff's USERRA claim in state court).

We note that a USERRA claim may also be brought in federal court by the Attorney General of the United States ("AG"). See 38 U.S.C. § 4323(a)(1), (b)(1); Stoglin v. Merit Sys. Prot. Bd., 640 Fed. Appx. 864, 868 (Fed. Cir. 2016) (noting that "'[e]nforcement of [USERRA] rights with respect to a State or private employer is set out in 38 U.S.C. § 4323, which provides for district court jurisdiction over actions against a state commenced by the United States, and state court jurisdiction over actions against a

waived sovereign immunity for USERRA claims and affirmed the trial court's dismissal of Mr. Smith's lawsuit. Id. at 576. This Court denied Mr. Smith's application for permission to appeal.

Thereafter, in 2014, the General Assembly enacted a statute waiving Tennessee's sovereign immunity for USERRA claims. Tenn. Code. Ann. § 29-20-208 (Supp. 2017).[5] However, the General Assembly specified that the waiver would become effective July 1, 2014, and would apply "to all [USERRA] claims . . . *accruing on or after such date* [July 1, 2014]." See 2014 Tenn. Pub. Acts, ch. 574, § 2 (emphasis added).

Relying on this newly enacted statute, Mr. Smith filed a motion on July 2, 2014, pursuant to Rule 60 of the Tennessee Rules of Civil Procedure, seeking relief from the prior judgment dismissing his USERRA claim. Smith v. Tenn. Nat'l Guard, No. M2014-02375-COA-R3-CV, 2015 WL 3455448, at *2 (Tenn. Ct. App. May 29, 2015), perm. app. denied (Tenn. Sept. 17, 2015) ("Smith II"). The trial court denied relief, explaining that Mr. Smith's "claim was still barred by sovereign immunity because it accrued before July 1, 2014." Id. at *1. The Court of Appeals affirmed, explaining that Mr. Smith had filed a complaint on August 8, 2011, alleging that the Guard "violated USERRA by refusing to rehire him after he returned from active duty." Id. at *3. The Court of Appeals pointed out that Mr. Smith's filing of this complaint evidenced his awareness "that he had suffered an injury as the result of [the Guard's] conduct" *before* the complaint was filed on August 8, 2011. Id. Therefore, the Court of Appeals explained, it was "undisputed that [Mr. Smith's] cause of action accrued prior to July 1, 2014." Id. This Court denied Mr. Smith's application for permission to appeal.

Not quite four months later, on January 4, 2016, Mr. Smith filed another complaint, for the third time bringing his case before the Circuit Court for Davidson County. In his 2016 complaint, from which the present appeal arises, Mr. Smith alleged the same facts in support of his USERRA claim. In addition, Mr. Smith challenged the

state commenced by a person."). The AG files the lawsuit in federal court in the name of the United States, but the AG appears and acts as attorney on the veteran's behalf. 38 U.S.C. § 4323(a)(1). In such a case, the AG may seek victim-specific benefits such as "any loss of wages or benefits suffered by reason of such employer's failure to comply" with USERRA. Id. § 4323(d)(1)(B). The recovery is then "held in a special deposit account and shall be paid, on order of the Attorney General, directly to the person." Id. § 4323(d)(2)(B).

[5] Tennessee Code Annotated section 29-20-208 provides:

> Immunity from suit of any governmental entity, or any agency, authority, board, branch, commission, division, entity, subdivision, or department of state government, or any autonomous state agency, authority, board, commission, council, department, office, or institution of higher education, is removed for the purpose of claims against and relief from a governmental entity under the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA), 38 U.S.C. §§ 4301-4334.

constitutionality of Tennessee Code Annotated section 29-20-208, arguing that it violated the Supremacy Clause of the United States Constitution. Specifically, Mr. Smith contended that by limiting the waiver of sovereign immunity to claims accruing after July 1, 2014, the General Assembly had imposed a statute of limitations on USERRA claims in violation of a 2008 federal statute[6] prohibiting the application of statutes of limitation to such claims.

The Guard moved to dismiss Mr. Smith's complaint and also defended the constitutionality of the statute. As grounds for dismissal, the Guard again relied on sovereign immunity, arguing that Mr. Smith's claim accrued before July 1, 2014, the date the waiver of sovereign immunity became effective. The Guard also raised res judicata as a basis for dismissal, pointing to the decisions in Smith I and Smith II. Finally, the Guard denied that Section 29-20-208 imposes a statute of limitations in violation of federal law and argued that it merely specifies the effective date of the waiver of sovereign immunity for USERRA claims.

The trial court rejected Mr. Smith's challenge to the constitutionality of the statute and again concluded that Mr. Smith's claim accrued prior to July 1, 2014, and therefore was barred by sovereign immunity. Accordingly, the trial court again dismissed Mr. Smith's lawsuit based on sovereign immunity.[7] Smith v. Tenn. Nat'l Guard, No. M2016-01109-COA-R3-CV, 2017 WL 1207881, at *3 (Tenn. Ct. App. Mar. 31, 2017), perm. app. granted (Tenn. Aug. 17, 2017) ("Smith III").

Mr. Smith appealed. In a divided decision, the Court of Appeals reversed. Smith III, 2017 WL 1207881, at *8. Although the Court of Appeals in Smith II had stated that it was "undisputed that [Mr. Smith's] cause of action accrued prior to July 1, 2014," Smith II, 2015 WL 3455448, at *3, the majority in Smith III determined that Mr. Smith's cause of action accrued when "he attained the right to sue pursuant to the judicial remedy

---

[6] See 38 U.S.C. § 4327(b) ("If any person seeks to file a complaint or claim with the Secretary, the Merit Systems Protection Board, or a Federal or State court under this chapter alleging a violation of this chapter, *there shall be no limit on the period for filing the complaint or claim.*" (emphasis added)).

[7] The trial court declined to base dismissal on the Guard's argument that res judicata barred the lawsuit, explaining in its oral ruling that the prior dismissal of Mr. Smith's lawsuit for lack of subject matter jurisdiction based on sovereign immunity did not constitute a dismissal on the merits under Tennessee law. Smith III, 2017 WL 1207881, at *2-3. See also Tenn. R. Civ. P. 41.02(3); Creech v. Addington, 281 S.W.3d 363, 378 (Tenn. 2009). The Guard has not relied on the law of the case doctrine or issue preclusion in this appeal. Smith III, 2017 WL 1207881, at *4. Thus, we need not address how, if at all, those concepts apply in these circumstances.

- 5 -

created by Tennessee Code Annotated section 29-20-208."[8]  Smith III, 2017 WL 1207881, at *7.  Like the Court of Appeals in Smith II, the dissenting judge would have affirmed the dismissal on the ground that Mr. Smith's USERRA claim accrued in July 2011, long before the July 1, 2014 effective date of the waiver of sovereign immunity.  Id. at *8, 10 (McBrayer, J., dissenting).[9]

The Guard filed an application for permission to appeal pursuant to Tennessee Rule of Appellate Procedure 11, arguing that the Court of Appeals misapplied the standards of statutory construction applicable to waivers of sovereign immunity and misinterpreted Tennessee decisions addressing when a claim accrues.  We granted the Guard's application.

## II. Standard of Review

This appeal arises from the trial court's decision granting the Guard's motion to dismiss Mr. Smith's complaint for failure to state a claim based on sovereign immunity and lack of subject matter jurisdiction.  The Guard mounted a facial challenge to subject matter jurisdiction; thus, familiar standards govern our review.  Church of God in Christ, Inc. v. L. M. Haley Ministries, Inc., 531 S.W.3d 146, 160 (Tenn. 2017).  In particular, the factual allegations of the complaint are taken as true.  Brown v. Tenn. Title Loans, Inc., 328 S.W.3d 850, 854-55 (Tenn. 2010).  We review de novo the lower court's legal conclusions, including its ruling on the legal sufficiency of the complaint.  Webb v. Nashville Area Habitat for Humanity, Inc., 346 S.W.3d 422, 426 (Tenn. 2011).

De novo review also applies to the questions of statutory construction presented in this appeal, and we afford no presumption of correctness to the conclusions of the courts below.  Moreno v. City of Clarksville, 479 S.W.3d 795, 802 (Tenn. 2015).

## III. Analysis

### A. Sovereign Immunity

The sovereign State of Tennessee is immune from lawsuits "'except as it consents to be sued.'"  Stewart v. State, 33 S.W.3d 785, 790 (Tenn. 2000) (quoting Brewington v. Brewington, 387 S.W.2d 777, 779 (Tenn. 1965)).  In the context of sovereign immunity, "'[t]he State includes 'the departments, commissions, boards, institutions and

---

[8] The majority in Smith III "consider[ed] the accrual issue anew," without reference to Smith II in its substantive analysis, because the parties had not raised res judicata or collateral estoppel before the Court of Appeals.  2017 WL 1207881, at *4.

[9] The dissenting judge made no reference to Smith II, despite reaching a conclusion consistent with it.  Smith III, 2017 WL 1207881, at *8-10 (McBrayer, J., dissenting).

municipalities of the State'" such as the Guard. Davidson v. Lewis Bros. Bakery, 227 S.W.3d 17, 19 (Tenn. 2007) (quoting Metro. Gov't of Nashville & Davidson Cnty. v. Allen, 415 S.W.2d 632, 635 (Tenn. 1967)).

Sovereign immunity originated in the common law, but the doctrine is now embodied both in a state constitutional provision and in a statute. Mullins v. State, 320 S.W.3d 273, 278 (Tenn. 2010). Article I, section 17 of the Tennessee Constitution provides that "[s]uits may be brought against the State in such manner and in such courts as the Legislature may by law direct." Additionally, a statute provides:

> No court in the state shall have any power, jurisdiction or authority to entertain any suit against the state, or against any officer of the state acting by authority of the state, with a view to reach the state, its treasury, funds or property, and all such suits shall be dismissed as to the state . . . .

Tenn. Code Ann. § 20-13-102(a) (2009). Both provisions clearly reserve to the General Assembly exclusive power to waive Tennessee's sovereign immunity and to prescribe the terms and conditions under which the State may be sued, "'including when, in what forum, and in what manner suit may be brought.'" Sneed v. City of Red Bank, Tenn., 459 S.W.3d 17, 23 (Tenn. 2014) (quoting Cruse v. City of Columbia, 922 S.W.2d 492, 495 (Tenn.1996)); see also Hughes v. Metro. Gov't of Nashville & Davidson Cnty., 340 S.W.3d 352, 360 (Tenn. 2011); Mullins, 320 S.W.3d at 283.

Thus, courts will interpret a statute as waiving the State's sovereign immunity only if the legislation waives sovereign immunity "in 'plain, clear, and unmistakable' terms." Mullins, 320 S.W.3d at 283 (quoting Northland Ins. Co. v. State, 33 S.W.3d 727, 731 (Tenn. 2000)). A "waiver of sovereign immunity must be explicit, not implicit." Colonial Pipeline Co. v. Morgan, 263 S.W.3d 827, 853 (Tenn. 2008). In other words, statutes waiving sovereign immunity must "clearly and unmistakably" express the General Assembly's intent to permit claims against the State. Davidson, 227 S.W.3d at 19 (quoting Scates v. Bd. of Comm'rs of Union City, 265 S.W.2d 563, 565 (Tenn. 1954)). In determining whether a statute satisfies this standard, we focus "on the actual words chosen and enacted by the legislature." Mullins, 320 S.W.3d at 283. Courts lack authority to abrogate the State's sovereign immunity and must avoid inadvertently broadening the scope of legislation authorizing suits or claims against the State. Hill v. Beeler, 286 S.W.2d 868, 869 (Tenn. 1956).

Here, we have no difficulty in concluding that the General Assembly clearly and unmistakably intended to waive the State's sovereign immunity for USERRA claims by enacting Tennessee Code Annotated section 29-20-208. The statute expressly provides that "immunity from suit . . . is removed" for USERRA claims. Tenn. Code Ann. § 29-20-208. But the General Assembly also clearly and unmistakably limited the waiver of sovereign immunity by making it "take effect July 1, 2014" and by applying it only to

claims "accruing on or after" July 1, 2014. 2014 Tenn. Pub. Acts, ch. 574, § 2. The General Assembly chose not to make the waiver of sovereign immunity retroactively effective or applicable to past events, although it could have done so. See Morris v. State, No. M1999-02714-COA-RM-CV, 2002 WL 31247079, at *1 (Tenn. Ct. App. Oct. 8, 2002) (holding that the General Assembly has the authority to "enact retroactive laws waiving the State's sovereign immunity with regard to past events"). The crucial task then, for purposes of this appeal and the waiver of sovereign immunity, is determining when Mr. Smith's USERRA claim accrued. The Court of Appeals' majority determined that Mr. Smith's claim accrued on July 1, 2014, "when he attained the right to sue pursuant to the judicial remedy created by Tennessee Code Annotated section 29-20-208." Smith III, 2017 WL 1207881, at *7. We cannot agree and conclude that the Court of Appeals' majority misapplied prior decisions of this Court discussing the concept of accrual.

## B. Accrual of a Claim

Courts most often examine the concept of accrual when determining the date on which an applicable statute of limitations begins to run. Redwing v. Catholic Bishop for Diocese of Memphis, 363 S.W.3d 436, 457 (Tenn. 2012). Under the traditional common law rule, a claim accrued "immediately upon the infliction or occurrence of injury and . . . mere ignorance or failure of [a] plaintiff to discover his cause of action or the subsequent resulting damage [did] not toll the statute [of limitations]." Teeters v. Currey, 518 S.W.2d 512, 515-16 (Tenn. 1974). Strictly applying this traditional rule produced injustice because a claim could accrue and be barred by the statute of limitations before a plaintiff had any knowledge of the injury. Id. To ameliorate such an unjust result, "state courts and legislatures adopted what is now known as the 'discovery rule.'" Redwing, 363 S.W.3d at 458. This Court did so in 1974, adopting "the discovery rule in response to the 'harsh and oppressive' results of the traditional accrual rule in circumstances in which the injured party was unaware of the injury." Id. (quoting Teeters, 518 S.W.2d at 516). The Teeters Court held that "[a] cause of action accrues and the statute of limitations commences to run when the patient discovers, or in the exercise of reasonable care and diligence for his own health and welfare, should have discovered the resulting injury." Teeters, 518 S.W.2d at 517. The Teeters decision was limited to surgical malpractice claims, but later this Court extended the discovery rule to many other types of claims. Redwing, 363 S.W.3d at 458 (citing Justin N. Joy, Comment, Civil Procedure—Pero's Steak & Spaghetti House v. Lee: Tennessee Declines to Extend the Discovery Rule to Claims of Converted Negotiable Instruments, 34 U. Mem. L. Rev. 475, 487 & n. 63 (2004) (cataloging the causes of action to which the discovery rule applies)).

In the years since Teeters, this Court has often discussed how a claim accrues when applying the discovery rule. See, e.g., Sherrill v. Souder, 325 S.W.3d 584, 595 (Tenn. 2010) (holding that a cause of action accrues when the plaintiff discovers both the

injury and the "identity of the person or persons whose wrongful conduct caused the injury"); John Kohl & Co. v. Dearborn & Ewing, 977 S.W.2d 528, 532 (Tenn. 1998) (holding that a cause of action accrues when the plaintiff knows or should know that the plaintiff has sustained an injury "as a result of wrongful . . . conduct by the defendant"); Wyatt v. A-Best, Co., 910 S.W.2d 851, 855 (Tenn. 1995) (holding that "a prerequisite to the running of the statute of limitations is [the] plaintiff's reasonable knowledge of the injury, its cause and origin"); Foster v. Harris, 633 S.W.2d 304, 305 (Tenn. 1982) (holding that "no judicial remedy [is] available to [a] plaintiff until he [or she] discover[s], or reasonably should have discovered, (1) the occasion, the manner and means by which a breach of duty occurred that produced his [or her] injury; and (2) the identity of the defendant who breached the duty"); McCroskey v. Bryant Air Conditioning Co., 524 S.W.2d 487, 491 (Tenn. 1975) (holding that "in tort actions . . . the cause of action accrues . . . when the injury occurs or is discovered, or when in the exercise of reasonable care and diligence, it should have been discovered").

"Under the current discovery rule, a cause of action accrues . . . not only when the plaintiff has actual knowledge of a claim, but also when the plaintiff has actual knowledge of facts sufficient to put a reasonable person on notice that he [or she] has suffered an injury as a result of wrongful conduct." Redwing, 363 S.W.3d at 459 (internal quotations omitted). This definition of accrual has prevailed in Tennessee since at least 1974, when Teeters was decided. Because we presume that the General Assembly knows the state of the law on a subject under consideration at the time it acts, see Hughes, 340 S.W.3d at 363, the General Assembly is presumed to have known of the many decisions of this Court defining accrual when it used that term to limit the waiver of sovereign immunity in Section 29-20-208 to USERRA claims accruing on or after July 1, 2014. We must, therefore, interpret the term "accruing" as used in the waiver of sovereign immunity consistently with these prior decisions to avoid inappropriately expanding the waiver beyond its intended scope. Therefore, to decide whether Mr. Smith's claim accrued before, on, or after July 1, 2014, we need only determine when Mr. Smith actually knew he had suffered an injury as a result of the Guard's allegedly wrongful conduct. The answer to this question is abundantly clear. As the Court of Appeals itself stated in Smith II, it is undisputed that Mr. Smith had actual knowledge that he had suffered an injury as a result of the Guard's allegedly wrongful conduct sometime before August 8, 2011, when he first filed a complaint alleging a USERRA claim. 2015 WL 3455448, at *3. Mr. Smith's claim accrued, therefore, long before July 1, 2014, and remains barred by sovereign immunity, as the trial court determined, because Section 29-20-208 limited the waiver of sovereign immunity to USERRA claims *accruing* on or after July 1, 2014.

In so holding, we decline to adopt the Court of Appeals' majority's interpretation of the waiver of sovereign immunity. Doing so would inappropriately extend the scope of the waiver to encompass every claim that has arisen since USERRA was enacted in 1994, in contravention of the well-settled rule "that statutes permitting suits against the

State must be strictly construed." Moreno, 479 S.W.3d at 810 (quoting Auto. Sales Co. v. Johnson, 122 S.W.2d 453, 455 (Tenn. 1938)). The Court of Appeals' majority's interpretation would also render meaningless the words "accruing on or after" July 1, 2014, which is a pitfall courts must avoid when construing statutes. Leab v. S & H Mining Co., 76 S.W.3d 344, 349 n.3 (Tenn. 2002) ("[W]e must avoid constructions which would render portions of the statute meaningless or superfluous."); see also Kiser v. Wolfe, 353 S.W.3d 741, 750–51 (Tenn. 2011) (quoting and citing Leab). Finally, our research has revealed no authority in this State holding that enactment of a statute waiving sovereign immunity alters the date a claim accrues, and several other states have held that enactment of a statute waiving sovereign immunity does *not* alter the date a claim accrues. See Grantham v. Miss. Dep't of Corr., 522 So. 2d 219, 222-23 (Miss. 1988) (interpreting a statute waiving sovereign immunity for "claims that accrue on or after July 1, 1985" as inapplicable to a lawsuit stemming from a February 12, 1985 shooting because the shooting occurred and the claim accrued before July 1, 1985); Bd. of Regents v. Oglesby, 591 S.E.2d 417, 421-22 (Ga. Ct. App. 2003) (concluding that the negligence cause of action was barred because it accrued long before passage of the statutory waiver of sovereign immunity); State v. Williamson Polishing & Plating Co., 384 N.E.2d 1114, 1115 (Ind. Ct. App. 1979) (holding that a claim accrued and became barred by the applicable statute of limitations before the State waived sovereign immunity for the claim and stating that the waiver of sovereign immunity was not "intended to resuscitate tort claims which were otherwise barred by the statute of limitations"). In erroneously concluding that the waiver of sovereign immunity triggered anew the accrual of Mr. Smith's claim, the Court of Appeals' majority relied on the following language from a 1995 decision of this Court, "a cause of action in tort does not accrue until a *judicial remedy* is available." Wyatt, 910 S.W.2d at 855 (citing Potts v. Celotex Corp., 796 S.W.2d 678, 681 (Tenn. 1990); Foster, 633 S.W.2d at 305) (emphasis added). The Court of Appeals' majority defined "judicial remedy" as "a right to sue." Smith III, 2017 WL 1207881, at *7. The Court of Appeals' majority failed to utilize the following definition of "judicial remedy" that the Wyatt Court itself provided:

> *A judicial remedy is available when (1) a breach of a legally recognized duty owed to [a] plaintiff by [a] defendant (2) causes [a] plaintiff legally cognizable damage.* A breach of a legally cognizable duty occurs when [a] plaintiff discovers or reasonably should have discovered, (1) the occasion, the manner and means by which a breach of duty occurred that produced . . . injury; and (2) the identity of the defendant who breached the duty. Legally cognizable damages occur when [a] plaintiff discovers facts which would support an action for tort against the tortfeasor.

Wyatt, 910 S.W.2d at 855 (emphasis added) (internal citations and quotation marks omitted). The Wyatt Court used "judicial remedy" to mean, "[q]uite simply, [that] a plaintiff must have discovered the existence of facts which would support an action in tort against the tortfeasor" and "[s]uch facts include not only the existence of an injury,

but the tortious origin of the injury." Id. (internal citations and quotation marks omitted). The Wyatt Court's definition of "judicial remedy" is entirely consistent with other decisions of this Court, already cited herein, discussing the concept of accrual. Applying that definition, we have no hesitation in concluding that the Court of Appeals' majority erred in determining that Mr. Smith's claim accrued on or after July 1, 2014. As already explained, Mr. Smith knew of his alleged injury and USERRA claim against the Guard sometime before August 8, 2011, the date he filed his initial complaint alleging a USERRA claim. Thus, Mr. Smith's claim accrued prior to July 1, 2014, and remains barred by sovereign immunity.

## IV. Conclusion

For the reasons stated herein, the judgment of the Court of Appeals is reversed. The judgment of the trial court dismissing this action is reinstated. Costs of this appeal are taxed to David R. Smith, for which execution may issue if necessary.

_____
CORNELIA A. CLARK, JUSTICE