IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 17, 2025 Session

## PAUL BLAYLOCK MD JD v. UNIVERSITY OF TENNESSEE MARTIN

**Appeal from the Circuit Court for Weakley County**
**No. 2024-CV-11     Jeff Parham, Judge**

_____

**No. W2025-00212-COA-R3-CV**

_____

The plaintiff filed this lawsuit in circuit court against the University of Tennessee (at Martin), alleging twelve separate counts relating to the University's handling of a charitable gift made by the plaintiff. The claims ranged from breach of contract to defamation to infliction of emotional distress, among others. The circuit court granted the University's motion to dismiss for lack of subject matter jurisdiction, concluding that the Tennessee Claims Commission has exclusive jurisdiction over suits against the State for the torts alleged by the plaintiff and any breach of contract claim. The plaintiff appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which KENNY W. ARMSTRONG and VALERIE L. SMITH, JJ., joined.

Robert J. Notestine, III, Nashville, Tennessee, for the appellant, Paul Blaylock MD JD.

Heather C. Colturi, Memphis, Tennessee, for the appellee, University of Tennessee.

## MEMORANDUM OPINION[1]

---

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

# I. FACTS & PROCEDURAL HISTORY

Dr. Paul Blaylock filed a complaint in Weakley County Circuit Court against the University of Tennessee (at Martin).  According to the complaint, Dr. Blaylock is an alumnus of the University who donated funds for a building complex that was constructed at the University, consisting of a Parthenon building, student plaza, fountain, and "inspirational plaques/kiosks" with educational quotes meant to inspire students.  The complaint alleges that Dr. Blaylock met with University leaders about the project, and ultimately, he and the University "entered into a contract" for the terms of the charitable gift.  According to the complaint, the project was constructed and was dedicated in October 2023.  However, months later, Dr. Blaylock learned that the University had removed all of the inspirational plaques from the site and planned to substitute inferior plaques that were not donated by Dr. Blaylock.  The complaint asserted twelve separate "counts" arising out of this dispute, which were described as defamation, breach of contract, intentional and negligent infliction of emotional distress, "Violation of Intellectual Proprietary Property" based on the custom-made plaques, "Violation of the Tennessee Charitable Donor Statute, (TCA 35-13-103)," tortious interference with contract, promissory estoppel, a claim for declaratory judgment as to whether the parties entered into a contract, unjust enrichment, a request for specific performance of the contract, and a claim for punitive damages.  He sought $10 million in economic damages, $750,000 in noneconomic damages, and $10 million in punitive damages.

The University of Tennessee filed a motion to dismiss for lack of subject matter jurisdiction.  The University argued that, as an institution of the State of Tennessee, it is cloaked with the State's sovereign immunity from suit.  As a result, the University argued, Tennessee courts lack subject matter jurisdiction over a claim against the University in the absence of an explicit waiver of sovereign immunity.  The University noted that the complaint in this case essentially sought monetary damages, specific performance of a contract, and a declaratory judgment regarding the existence of a contract.  It argued that no waiver of sovereign immunity existed to allow a suit *in circuit court* seeking monetary damages against the State.  It pointed out that the General Assembly had enacted the Tennessee Claims Commission Act as a limited waiver of sovereign immunity and granted the Commission exclusive jurisdiction over certain types of claims for monetary damages.  For example, the University conceded that sovereign immunity is waived for certain types of claims for breach of contract to the extent that the claim falls within the parameters of the Claims Commission Act.[2]  However, the University argued that the General Assembly had not waived sovereign immunity to permit such a claim, or the others asserted in the

---

[2] The University noted that because the action was not filed in the Claims Commission, it was reserving its arguments related to the Claims Commission's lack of subject matter jurisdiction over any claims asserted in the complaint that fell outside the scope of the enumerated claims set forth in the Claims Commission Act.

complaint, *in circuit court*. Thus, to the extent the claims fell within the categories listed in the Claims Commission Act, the University argued that the Claims Commission had exclusive jurisdiction over such claims, not the circuit court. To the extent that the claims asserted fell outside the enumerated categories permitted to be filed in the Claims Commission, the University argued that no waiver of sovereign immunity existed. It further argued that the General Assembly had not waived sovereign immunity for suits against the State for specific performance or for a declaratory judgment based on a contract.[3] Thus, the University asked the trial court to dismiss the complaint for lack of subject matter jurisdiction.

Dr. Blaylock filed a response in opposition to the motion to dismiss. He argued that his claims constituted "exceptions" to sovereign immunity. Dr. Blaylock insisted that the key to evaluating the sovereign immunity issue was his count based on Tennessee Code Annotated section 35-13-103. The statute provides,

> **§ 35-13-103. Gift instruments controlling; requirements**
> A gift instrument that specifies the charitable beneficiaries, objects, purposes or subjects of the charitable gift controls the disposition or administration of the charitable gift, except as provided in §§ 35-13-114 and 35-13-107.

Dr. Blaylock contended that this was a "protective statute" that was "created to protect charitable donors" and permitted disputes based on charitable contributions to public institutions to be brought in Tennessee courts of record. He claimed that "the Tennessee Legislature never intended for there to be sovereign immunity for a charitable gift." In addition, Dr. Blaylock analyzed the Tennessee Governmental Tort Liability Act and relied on cases involving claims against municipalities and a private university. He suggested

---

[3] We note that on the declaratory judgment issue, the University relied on *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 853 (Tenn. 2008), wherein the Court stated that "[t]he Declaratory Judgment Act does not contain an explicit waiver of sovereign immunity." The University acknowledged that with the enactment of Tennessee Code Annotated section 1-3-121, the General Assembly had consented to declaratory relief against the State "in limited situations," as recognized in *Recipient of Final Expunction Ord. in McNairy Cnty. Cir. Ct. Case No. 3279 v. Rausch*, 645 S.W.3d 160, 168 (Tenn. 2022) ("The General Assembly clearly and unmistakably waived sovereign immunity by enacting Tennessee Code Annotated section 1-3-121. The statute broadly declares: '*Notwithstanding any law to the contrary*, a cause of action *shall exist* ... for any affected person who seeks *declaratory or injunctive relief in any action brought regarding the legality or constitutionality of a governmental action.* A cause of action shall not exist under this chapter to seek damages.'" Tenn. Code Ann. § 1-3-121 (Supp. 2021) (emphases added)."). However, the University maintained that Dr. Blaylock's request for declaratory judgment was not one regarding the "legality or constitutionality" of the University's actions, but rather an attempt to use a declaratory judgment to determine the merits of his breach of contract claim, as his complaint sought a declaratory judgment "as to whether the Plaintiff entered into a contract." Thus, the University argued that the declaratory judgment claim was improper as duplicative of the breach of contract claim, citing *Whitworth v. City of Memphis*, 689 S.W.3d 579, 594 (Tenn. Ct. App. 2023). It further argued that the claim was outside the scope of the limited waiver of sovereign immunity in section 1-3-121. Section 1-3-121 was repealed effective April 7, 2026, by 2026 Pub. Acts, c. 664, § 1.

that his request for specific performance of the contract should proceed based on equitable principles.[4] Finally, Dr. Blaylock argued that the negligence claims listed in his complaint fell under the exceptions listed in the Claims Commission Act for which the State had waived its immunity.

After a hearing, the trial court entered an order granting the University's motion to dismiss. The court noted the allegations in the complaint regarding Dr. Blaylock's gift to the University for the construction of the building and inspirational plaque kiosks. The court found that Dr. Blaylock "asserted numerous causes of action, but basically the suit was one for various torts and breach of contract." The trial court noted that the University had filed a motion to dismiss for lack of a subject matter jurisdiction as a facial challenge to the complaint. At the outset, the trial court questioned the University's suggestion that sovereign immunity could be applied as a "shield" so broadly as to leave Dr. Blaylock "without any recourse." Still, the trial court explained that the General Assembly had created the Tennessee Claims Commission in 1985 and provided it with exclusive jurisdiction over specific suits against the State and its subsidiaries. The court found that the Claims Commission Act specifically applied to the torts alleged in the complaint and any breach of contract. As a result, the trial court found that it was unable to adjudicate the case and granted the motion to dismiss. Dr. Blaylock timely filed a notice of appeal.

## II. ISSUES PRESENTED

Dr. Blaylock presents the following issues for review on appeal:

1.      Whether the trial court erred in granting UTM's motion to dismiss for lack of subject matter jurisdiction;
2.      Whether the trial court abused its discretion in referring the case to the Claims Commission by misinterpreting its limited jurisdiction;
3.      Whether the trial court erred by failing to address the alleged violation of Tennessee Code Annotated § 35-13-103 regarding abuse of the terms of a charitable gift;
4.      Whether the trial court erred by failing to address the claim for

---

[4] Regarding the Declaratory Judgment Act, Dr. Blaylock's response simply stated:

The Tennessee Declaratory Judgment Act, codified at Tennessee Code Annotated sections 29-14-101 to 113, grants courts subject matter jurisdiction to address constitutional issues and, as necessary, issue declaratory or injunctive relief against state officers in their individual capacity. Therefore, while sovereign immunity generally protects state universities from being sued, the Tennessee General Assembly has provided a statutory waiver for declaratory judgment actions that seek to address the legality or constitutionality of governmental actions. This statutory framework allows plaintiffs to bring declaratory judgment actions against state universities, provided that the claims do not seek monetary damages and comply with the procedural requirements set forth in the relevant statutes.

- 4 -

specific performance to restore the plaques;

5. Whether the trial court erred by admitting in open court that it did not review Plaintiff's memorandum including an affidavit and exhibits before ruling on the motion to dismiss;

6. Whether the trial court erred in not issuing findings of fact on all his causes of action.[5]

The University frames the issues on appeal as follows:

1. Whether this Court should affirm the dismissal of the complaint for lack of subject matter jurisdiction because the University is entitled to sovereign immunity on all claims asserted in the complaint under Tenn. Code Ann. § 20-13-102 and Article I, Section 17 of the Tennessee Constitution and because the Tennessee Claims Commission has exclusive subject matter jurisdiction to adjudicate any claims for which the State of Tennessee has waived sovereign immunity under the Tennessee Claims Commission Act, Tenn. Code Ann. 9-8-301, *et seq*.?

2. Whether this Court should dismiss this appeal because Appellant has waived appellate review by failing to submit a brief that complies with the Tennessee Rules of Appellate Procedure and the Rules of this Court?[6]

For the following reasons, we affirm the decision of the circuit court.

## III. DISCUSSION

Regarding challenges to subject matter jurisdiction, our Supreme Court has explained:

Challenges to a court's subject matter jurisdiction call into question the court's "lawful authority to adjudicate a controversy brought before it," *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000), and, therefore, should be viewed as a threshold inquiry. *Schmidt v. Catholic Diocese of Biloxi*, 2008-CA-00416-SCT (¶ 13), 18 So. 3d 814, 821 (Miss. 2009). Whenever subject matter jurisdiction is challenged, the burden is on the

---

[5] In his brief on appeal, Dr. Blaylock states that certain facts have come to his attention since the hearing regarding the trial judge's connections with the University of Tennessee at Martin, which, he says, raise concerns about "fairness." However, he does not cite to anywhere in the record to establish the existence of these facts, he did not file a motion for recusal, and he did not raise any issue on appeal regarding this matter. Thus, we will not address the matter further in this appeal.

[6] We recognize numerous deficiencies in Dr. Blaylock's brief on appeal but do not deem it so deficient as to warrant dismissing the appeal.

- 5 -

plaintiff to demonstrate that the court has jurisdiction to adjudicate the claim. *See Staats v. McKinnon*, 206 S.W.3d 532, 543 (Tenn. Ct. App. 2006); 1 Lawrence A. Pivnick, *Tennessee Circuit Court Practice* § 3:2 (2011 ed.) ("Pivnick").

Litigants may take issue with a court's subject matter jurisdiction using either a facial challenge or a factual challenge. *See, e.g., Schutte v. Johnson*, 337 S.W.3d 767, 769-70 (Tenn. Ct. App. 2010); *Staats v. McKinnon*, 206 S.W.3d at 542. A facial challenge is a challenge to the complaint itself. *See Schutte v. Johnson*, 337 S.W.3d at 769. Thus, when a defendant asserts a facial challenge to a court's subject matter jurisdiction, the factual allegations in the plaintiff's complaint are presumed to be true. *See, e.g., Staats v. McKinnon*, 206 S.W.3d at 542-43.

Alternatively, "[a] factual challenge denies that the court actually has subject matter jurisdiction as a matter of fact even though the complaint alleges facts tending to show jurisdiction." *Staats v. McKinnon*, 206 S.W.3d at 543. Thus, the factual challenge "attacks the facts serving as the basis for jurisdiction." *Schutte v. Johnson*, 337 S.W.3d at 770.

*Redwing v. Catholic Bishop for the Diocese of Memphis*, 363 S.W.3d 436, 445-46 (Tenn. 2012).[7]

Because Dr. Blaylock has repeatedly stated that he is being left with "no recourse" or "no remedy," we briefly note the nature and history of the Tennessee Claims Commission. "Few attorneys, and even fewer laypersons, know about the Tennessee Claims Commission. The commission, although not titled as a court by statute, functions as a court for the purpose of adjudicating monetary lawsuits against the State of Tennessee." Commissioner Robert N. Hibbett & Justin Hickerson, *The Tennessee Claims Commission -- The State's Least-Known "Court"*, 53 Tenn. B.J. 18, (Mar. 2017). The Tennessee Supreme Court has provided the following helpful explanation of the jurisdiction of the Tennessee Claims Commission and its relation to sovereign immunity:

It is a well-settled principle of constitutional and statutory law in this state that "[t]he State of Tennessee, as a sovereign, is immune from suit except as it consents to be sued."[8] *Brewington v. Brewington*, 215 Tenn. 475,

---

[7] Without citing any authority beyond "established Tennessee law," Dr. Blaylock argues on appeal that the trial court committed a "procedural error" by failing to review an affidavit and attachments he submitted. However, the trial judge explained that he had read Dr. Blaylock's memo but not his affidavit and attachments because this was a facial attack on subject matter jurisdiction based on the complaint itself. This was proper. "When evaluating a facial challenge to subject matter jurisdiction, a court limits its consideration to the factual allegations of the complaint and considers nothing else." *Church of God in Christ, Inc. v. L. M. Haley Ministries, Inc.*, 531 S.W.3d 146, 160 (Tenn. 2017).

[8] "It is also well settled that UT is 'clothed with sovereign immunity' as an arm of the State." *Crouch v. Univ. of Tenn.*, No. E2023-00023-COA-R3-CV, 2024 WL 2319652, at *3 (Tenn. Ct. App. May

480, 387 S.W.2d 777, 779 (1965). This doctrine of sovereign immunity "has been a part of the common law of Tennessee for more than a century and [it] provides that suit may not be brought against a governmental entity unless that governmental entity has consented to be sued." *Hawks v. City of Westmoreland*, 960 S.W.2d 10, 14 (Tenn.1997). Despite this general grant of immunity, however, the courts of this state have frequently recognized that the Tennessee Constitution has modified this rule of absolute sovereign immunity by providing that "[s]uits may be brought against the State in such manner and in such courts as the Legislature may by law direct." Tenn. Const. art. I, § 17; *see also Kirby v. Macon County*, 892 S.W.2d 403, 406 (Tenn. 1994).

Pursuant to its constitutional power to provide for suits against the state, the legislature created the Tennessee Claims Commission in 1984 to hear and adjudicate certain monetary claims against the State of Tennessee. *See* Tenn. Code Ann. §§ 9-8-301 to 307 (1999). While the Claims Commission has exclusive jurisdiction to hear claims arising against the state, *cf.* Tenn. Code Ann. § 20-13-102(a) (1994), this jurisdiction is limited only to those claims specified in Tennessee Code Annotated section 9-8-307(a). If a claim falls outside of the categories specified in section 9-8-307(a), then the state retains its immunity from suit, and a claimant may not seek relief from the state. *Cf. Hill v. Beeler*, 199 Tenn. 325, 329, 286 S.W.2d 868, 869 (1956) (stating that "except as the Legislature of the State consents there is no jurisdiction in this Board of Claims to entertain suits against the State").

*Stewart v. State*, 33 S.W.3d 785, 790 (Tenn. 2000). Thus, "[t]he Tennessee Claims Commission Act, Tenn. Code Ann. § 9-8-301 et seq., waives the state's sovereign immunity and provides claimants with a cause of action—and a deep pocket—that they would not otherwise be able to pursue." *Haley v. Univ. of Tennessee-Knoxville*, 188 S.W.3d 518, 524 (Tenn. 2006). The General Assembly "enacted a comprehensive procedure for the filing, prosecution, and disposition of monetary claims against the State." *Mullins v. State*, 320 S.W.3d 273, 278-79 (Tenn. 2010). However, "[t]he legislature did not remove immunity for all claims against the State, but only those claims specified in section 9-8-307(a)." *Id.* at 279. Tennessee Code Annotated section 9-8-307 expressly provides that the Commission "has *exclusive* jurisdiction to determine all monetary claims against the state based on the acts or omissions of 'state employees,'. . . falling within one (1) or more of the following categories," and it proceeds to list categories (A) through (W). Tenn. Code Ann. § 9-8-307(a)(1) (emphasis added). "Outside of these categories, no jurisdiction exists for claims against the State." *Brown v. State*, 333 S.W.3d 102, 104 (Tenn. Ct. App. 2010) (quoting *Morton v. State*, No. M2008-02305-COA-R3-CV, 2009 WL 3295202, at *2 (Tenn. Ct. App. Oct. 13, 2009)).

22, 2024), *perm. app. denied* (Tenn. Sept. 12, 2024).

We now turn to Dr. Blaylock's arguments on appeal. He first contends that the trial court failed to recognize the "very limited and very narrow jurisdiction" of the Claims Commission, which he argues is limited to claims involving worker's comp, motor vehicle accidents, and professional malpractice, "none of which were pled in this case." This characterization of the Commission's jurisdiction is mistaken.

> The Tennessee Claims Commission is a tribunal (court) established by the state legislature to adjudicate monetary claims against the state based on the acts or omissions of state employees. The state has established a limited waiver of sovereign immunity in 23 statutorily established areas. Examples of these 23 categories include the following: the negligent care, custody and control of persons, property or animals; negligent operation or maintenance of a motor vehicle; dangerous conditions created or maintained on state real property or on state maintained highways; defamation; breach of a written contract; taxes paid under protest; and claims by crime victims.

Hibbett & Hickerson, 53 Tenn. B.J. at 19. "The statute granting jurisdiction to the Claims Commission, section 9-8-307, has been characterized as creating a 'sweeping procedure for filing monetary claims against the state.'" *Brown*, 333 S.W.3d at 104 (quoting *Northland Ins. Co.*, 33 S.W.3d at 729); *see also Boyraz v. State*, No. M2013-02796-COA-R3-CV, 2015 WL 2438756, at *2 (Tenn. Ct. App. May 20, 2015) ("the legislature created the Tennessee Claims Commission to have exclusive jurisdiction to adjudicate all monetary claims asserted against the State"). Later in his brief, Dr. Blaylock appears to concede that claims for breach of contract and defamation are "possibly" within the jurisdiction of the Claims Commission. However, he insists that the circuit court retains "full jurisdiction" over such claims as well. We disagree. Tennessee Code Annotated section 9-8-307 expressly provides that the Commission "has *exclusive* jurisdiction to determine all monetary claims against the state based on the acts or omissions of 'state employees,'. . . falling within" the enumerated categories. Tenn. Code Ann. § 9-8-307(a)(1) (emphasis added).

Next, Dr. Blaylock claims that "[t]wo critical statutes" require reversal of the trial court's order. He cites Tennessee Code Annotated section 29-20-205, which, he argues, "lists the exceptions to governmental immunity under the Governmental Tort Liability Act (GTLA)." However, the GTLA is inapplicable to claims asserted against the State. *See Moreno v. City of Clarksville*, 479 S.W.3d 795, 811-12 (Tenn. 2015) ("The Claims Commission Act, like the GTLA, sets forth a statutory scheme enacted by the Legislature to provide for a limited waiver of sovereign immunity; the only difference is that the Claims Commission Act is applicable to claims against the State of Tennessee, while the GTLA applies to claims against counties, municipalities, and other local governmental agencies."); *see also Hawks*, 960 S.W.2d at 14 ("In 1973, the General Assembly enacted the Tennessee Governmental Tort Liability Act ('the GTLA'), which governs claims

against counties, municipalities, and other local governmental agencies, but does not apply to state government.").

The second statute relied upon by Dr. Blaylock is Tennessee Code Annotated section 35-13-103. As previously noted, it simply provides that "[a] gift instrument that specifies the charitable beneficiaries, objects, purposes or subjects of the charitable gift controls the disposition or administration of the charitable gift, except as provided in §§ 35-13-114 and 35-13-107." Tenn. Code Ann. § 35-13-103. Dr. Blaylock argues that this statute "outlines specific regulations and protections for charitable donations." He claims that the legislature's passage of this statute indicates that it "intended to provide clear and unambiguous protection to charitable donors in this state and thus clearly removed any sovereign immunity defense against such violation." He suggests that "[t]he most obvious cause of action where the Circuit Court has clear jurisdiction to adjudicate is *the violation of this statute*." (emphasis added). He claims "this statutory violation" was his "primary cause of action." However, as the University aptly notes on appeal, Dr. Blaylock "has failed to demonstrate that the Tennessee General Assembly intended to waive the University's sovereign immunity in circuit courts for actions alleging a breach of a term of a conditional charitable gift." Simply put, Dr. Blaylock does not point to anything in the statute explicitly showing that sovereign immunity is waived to enable him to sue the University *in circuit court* for an alleged "violation of this statute." In fact, one of the 23 categories of claims over which the Claims Commission has exclusive jurisdiction is for "[n]egligent deprivation of statutory rights created under Tennessee law," but "[t]he claimant must prove under this subdivision (a)(1)(N) that the general assembly expressly conferred a private right of action in favor of the claimant against the state for the state's violation of the particular statute's provisions." Tenn. Code Ann. § 9-8-307(a)(1)(N); *see, e.g.*, *Boyraz*, 2015 WL 2438756, at *5 ("Tenn. Code Ann. § 9-8-307(a)(1)(N) requires that there be a statutory right at issue, with the additional requirement that there be proof that the legislature conferred a private right of action against the State."). Thus, we agree with the University that "to the extent that [Dr. Blaylock] has a cause of action for an alleged breach of the terms of his conditional charitable gift against the University," it "falls squarely within the exclusive subject matter jurisdiction of the Tennessee Claims Commission."[9] *See Newell v. Maitland*, No. W2007-01704-COA-R3-CV, 2008 WL 2122331, at *6 (Tenn. Ct. App. May 21, 2008) ("[E]ven assuming that Plaintiff could establish a violation of the statutes . . . , and a private right of action for such violation, exclusive jurisdiction for his negligence claims against the State Defendants is vested in the Tennessee Claims Commission.").[10]

---

[9] We express no opinion as to the University's argument that the statute does not provide a private right of action and that to the extent it gives rise to any cause of action it would be for breach of contract.

[10] The statute relied upon by Dr. Blaylock is part of the "Tennessee Charitable Beneficiaries Act of 1997." *See* Tenn. Code Ann. § 35-13-101. The Act "declares that the public policy of this state, as declared in its cases and statutes, favors gifts to charity that improve the general welfare through acts of philanthropy." Tenn. Code Ann. § 35-13-102(a). Although neither party cited it on appeal, the Act does contain a provision of note to the issues on appeal. Section 35-13-110 provides:

Finally, Dr. Blaylock argues that the trial court was required to make "findings of fact on all [twelve] causes of action" asserted in his complaint and to address the "jurisdictional issues" for each claim. Notably, his brief does not engage in that type of analysis either. Still, Dr. Blaylock argues that Tennessee Rule of Civil Procedure 52.01 required the trial court to make factual findings on all twelve causes of action. However, Rule 52.01 specifically provides that "[f]indings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12[.]" Tenn. R. Civ. P. 52.01. We also disagree with Dr. Blaylock's suggestion that the court failed to rule on all of his claims. The trial court found that Dr. Blaylock asserted numerous causes of action but basically his claims were for "various torts and breach of contract," and these were the types of claims that must be pursued in the Claims Commission, not circuit court. The trial court found that it was "without the ability to adjudicate this case" and dismissed the entire case. Because Dr. Blaylock failed to demonstrate that the circuit court had jurisdiction over any of his claims, we conclude that dismissal was appropriate. *See, e.g.*, *Campbell v. Tenn. Dep't of Correction*, No. M2015-01674-COA-R3-CV, 2016 WL 5831618, at *1-3 (Tenn. Ct. App. Sept. 29, 2016) (affirming the trial court's conclusion that a case with various causes of action relating to a prisoner's unpaid wages was "improperly filed in chancery court and should have been filed with the Tennessee Claims Commission, which is the proper forum to determine what relief, if any, may be warranted"); *Baxter v. State*, No. W2015-00078-COA-R3-CV, 2015 WL 9946302, at *4 (Tenn. Ct. App. Aug. 10, 2015)

---

(a) In all court actions directly affecting the amount, administration or disposition of a charitable gift or a discretionary charitable gift, the court may require that the attorney general and reporter be made a party to represent the charitable beneficiaries, potential charitable beneficiaries and all citizens of the state in all legal matters pertaining to the amount, administration and disposition of a charitable gift or discretionary charitable gift. The attorney general and reporter may sue and be sued, and, insofar as the suit against the attorney general and reporter is against the state, the state expressly consents to be sued. The attorney general and reporter may designate a district attorney general to prosecute or defend any court action.

However, we do not construe this limited provision regarding participation by the Attorney General as waiving sovereign immunity for the types of claims asserted in the complaint filed by Dr. Blaylock. "Courts will construe a statute as a waiver of sovereign immunity only if the statute 'clearly and unmistakably' express[es] the General Assembly's intent to permit claims against the State." *Rausch*, 645 S.W.3d at 168 (quoting *Smith v. Tenn. Nat'l Guard*, 551 S.W.3d 702, 709 (Tenn. 2018)). "We give effect to the legislature's intent by applying the text without broadening or narrowing its intended scope; if the statute is clear, we apply the plain meaning without further complication." *Id.* This seeks to "ensure that courts do not encroach upon the General Assembly's "exclusive power to waive Tennessee's sovereign immunity." *Id.* (quoting *Smith*, 551 S.W.3d at 708-09). The General Assembly has "exclusive power to waive Tennessee's sovereign immunity and to prescribe the terms and conditions under which the State may be sued, 'including when, in what forum, and in what manner suit may be brought.'" *Smith*, 551 S.W.3d at 708-09. For instance, in *Rausch*, the Court concluded that the General Assembly had utilized distinctive yet plain language to adopt a "unique, claim-specific and remedy-specific waiver of sovereign immunity." 645 S.W.3d at 168.

("The only statutory exceptions to the sovereign immunity of the State of Tennessee are those claims that may be heard by the Tennessee Claims Commission pursuant to Tennessee Code Annotated Section 9-8-307 *et seq*. . . . Therefore, we affirm the trial court's finding that it had no subject matter jurisdiction to hear a claim against the State of Tennessee for money damages."); *Parks v. State*, No. E2005-02790-COA-R3-CV, 2007 WL 516396, at *6 (Tenn. Ct. App. Feb. 20, 2007) ("The General Assembly has provided that the Tennessee Claims Commission has 'exclusive jurisdiction to determine all monetary claims against the state based on the acts or omissions of 'state employees' …' Tenn. Code Ann. § 9-8-307(a) []. Under these statutes, the State, generally shielded from suit under well-established principles of sovereign immunity, has not consented to be sued in Hamilton County Circuit Court, and the trial court therefore did not have jurisdiction to hear Mr. Parks' action against the State of Tennessee[.]") (citations omitted); *see also Crouch v. Univ. of Tenn.*, No. E2023-00023-COA-R3-CV, 2024 WL 2319652, at *1-4 (Tenn. Ct. App. May 22, 2024), *perm. app. denied* (Tenn. Sept. 12, 2024) ("In the case at bar, accepting the factual allegations in Mr. Crouch's complaint as true, Mr. Crouch's [] claim was premised on breach of his alleged contract for employment with UT. As such, this claim was within the exclusive jurisdiction of the Tennessee Claims Commission, *see* Tenn. Code Ann. § 9-8-307(a)(1)(L), and the trial court lacked subject matter jurisdiction to adjudicate the breach of contract claim. We therefore affirm the trial court's dismissal of this claim for lack of subject matter jurisdiction."). The Commission is vested with "very specific subject matter jurisdiction to adjudicate certain defined contract and tort claims against the State." *Cavnar v. State*, No. M2002-00609-COA-R3-CV, 2003 WL 535915, at *3 (Tenn. Ct. App. Feb. 26, 2003). Dr. Blaylock insists that the trial court should have addressed his request for specific performance of the contract separately, but again, he fails to identify any waiver of sovereign immunity that would permit such a claim to proceed in circuit court. "Whenever subject matter jurisdiction is challenged, the burden is on the plaintiff to demonstrate that the court has jurisdiction to adjudicate the claim." *Redwing*, 363 S.W.3d at 445.

In conclusion, we agree with the University that "to the extent that the State has waived sovereign immunity for any of the monetary claims asserted in the complaint under the Tennessee Claims Commission Act, the circuit court does not have subject matter jurisdiction to hear them because the Tennessee Claims Commission has exclusive subject matter jurisdiction." Dr. Blaylock has failed to demonstrate that any other claims can be pursued in circuit court either.[11] Therefore, the trial court properly granted the University's

---

[11] We note that the complaint included a request for declaratory judgment "as to whether the Plaintiff entered into a contract." It appears that the trial court may have accepted the University's argument that this claim was duplicative of the breach of contract claim, as the trial court's order stated that Dr. Blaylock "asserted numerous causes of action, but basically the suit was one for various torts and breach of contract." In any event, however, Dr. Blaylock's brief on appeal only mentions the term "declaratory judgment" once, when listing all twelve causes of action in the complaint and mentioning that one claim was for "declaratory judgment." He made no attempt to analyze his declaratory judgment claim separately, establish that it was not duplicative of his contract claim, or demonstrate that the circuit court would have

motion to dismiss.

## IV.   CONCLUSION

For the aforementioned reasons, the decision of the circuit court is hereby affirmed and remanded.  Costs of this appeal are taxed to the appellant, Paul Blaylock MD JD, for which execution may issue if necessary.

s/ Carma Dennis McGee
CARMA DENNIS MCGEE, JUDGE

---

subject matter jurisdiction over a declaratory judgment claim against the University regarding a contract. As such, we deem those issues waived.  *See Sneed v. Bd. of Pro. Resp. of Sup. Ct.*, 301 S.W.3d 603, 615 (Tenn. 2010) ("It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived.").